[No. B163118. Second Dist., Div. Three. Apr. 29, 2005.]

LUIS A. ACOSTA et al., Plaintiffs and Appellants, v.
GLENFED DEVELOPMENT CORP. et al., Defendants and Respondents.

[No. B165374. Second Dist., Div. Three. Apr. 29, 2005.]

CELESTINO CHAIDEZ et al., Plaintiffs and Appellants, v.
GLENFED DEVELOPMENT CORP. et al., Defendants, Cross-Complainants
and Appellants;
JENSEN PLASTERING, INC., et al., Cross-Defendants and Respondents.

[No. B169517. Second Dist., Div. Three. Apr. 29, 2005.]

CELESTINO CHAIDEZ et al., Plaintiffs and Appellants, v.
GLENFED DEVELOPMENT CORP. et al., Defendants, Cross-Complainants
and Appellants;
LETNER ROOFING CO., INC., et al., Cross-Defendants and Respondents.

**COUNSEL**

Law Offices of Freeman & Freeman and Lawrence P. Freeman for Plaintiffs and Appellants.

Kabateck & Garris, Brian S. Kabateck, Penny J. Manship; Law Offices of Ronald A. Hartmann and Ronald A. Hartmann for Consumer Attorneys of California as Amicus Curiae on behalf of Plaintiffs and Appellants.

Kasdan Simonds Riley & Vaughan, Barry C. Vaughan and Nikola J. Bates as Amicus Curiae on behalf of Plaintiffs and Appellants.

Ford, Walker, Haggerty & Behar, Shayne L. Wulterin, Maxine J. Lebowitz, Jeffrey S. Behar, Paul S. Cooley; Stephan, Oringher, Richman & Theodora, Harry W. R. Chamberlain II and Brian P. Barrow for Defendants, Cross-Complainants and Appellants and for Defendants and Respondents.

Cooper, White & Cooper, Kathleen F. Carpenter, Dee A. Ware; Luce, Forward, Hamilton & Scripps and Charles A. Bird for California Building Industry Association and Building Industry Legal Defense Foundation as Amici Curiae on behalf of Defendants, Cross-Complainants and Appellants.

Newmeyer & Dillion and Gregory L. Dillion for Centex Homes, William Lyon Homes, Inc., Standard Pacific Corp., KB Home, Fieldstone Communities, Inc., and 396 Investment Company as Amici Curiae on behalf of Defendants, Cross-Complainants and Appellants.

Fred J. Hiestand for Civil Justice Association of California as Amicus Curiae on behalf of Defendants, Cross-Complainants and Appellants.

Stanton, Kay & Watson and Lawrence H. Kay for Construction Employers Association as Amicus Curiae on behalf of Defendants, Cross-Complainants and Appellants.

Bohl, Cole & Wohlgemuth and Anthony B. Nixon for Cross-Defendant and Respondent Jensen Plastering, Inc.

Law Offices of Lydia Bouzalgou-Newcomb and Craig A. Holtz for Cross-Defendants and Respondents Jensen Plastering, Golden State Drywall, Inc. and Simpson's Finish Carpentry.

Walsworth, Franklin, Bevins & McCall, Stephen M. Nichols and Nyra M. Elsayess for Cross-Defendants and Respondents Letner Roofing Company, Inc. and Vineyard Roofing, Inc.

Law Offices of Linda M. Libertucci, George W. Allen, Sarah Yoseloff; Horvitz & Levy, David M. Axelrad and Frank J. Menetrez for Cross-Defendants and Respondents Keller Plaster, Inc., Builders Showcase Interiors, Falconer Insulation & Drywall and Superior Plumbing, Inc.

Summers & Shives, Robert V. Closson, Kellene J. McMillan and Lisa G. Shemonsky for California Professional Association of Specialty Contractors as Amicus Curiae on behalf of Cross-Defendants and Respondents Keller Plaster, Inc., Builders Showcase Interiors, Falconer Insulation & Drywall and Superior Plumbing, Inc.

## OPINION

**CROSKEY, J.**—In these consolidated appeals arising from a construction defect action, we are presented with issues relating to the application of Code of Civil Procedure, section 337.15.[1] The plaintiffs seek reversal of a summary

---

[1] Unless otherwise indicated, all statutory references are to the Code of Civil Procedure.

Section 337.15 states: "(a) No action may be brought to recover damages from any person, or the surety of a person, who develops real property or performs or furnishes the design, specifications, surveying, planning, supervision, testing, or observation of construction or construction of an improvement to real property more than 10 years after the substantial completion of the development or improvement for any of the following:

"(1) Any latent deficiency in the design, specification, surveying, planning, supervision, or observation of construction or construction of an improvement to, or survey of, real property.

"(2) Injury to property, real or personal, arising out of any such latent deficiency.

"(b) As used in this section, 'latent deficiency' means a deficiency which is not apparent by reasonable inspection.

"(c) As used in this section, 'action' includes an action for indemnity brought against a person arising out of that person's performance or furnishing of services or materials referred to in this section, except that a cross-complaint for indemnity may be filed pursuant to subdivision (b) of Section 428.10 in an action which has been brought within the time period set forth in subdivision (a) of this section.

"(d) Nothing in this section shall be construed as extending the period prescribed by the laws of this state for bringing any action.

"(e) The limitation prescribed by this section shall not be asserted by way of defense by any person in actual possession or the control, as owner, tenant or otherwise, of such an improvement, at the time any deficiency in the improvement constitutes the proximate cause for which it is proposed to bring an action.

"(f) *This section shall not apply to actions based on willful misconduct or fraudulent concealment.*

"(g) The 10-year period specified in subdivision (a) shall commence upon substantial completion of the improvement, but not later than the date of one of the following, whichever first occurs:

"(1) The date of final inspection by the applicable public agency.

"(2) The date of recordation of a valid notice of completion.

"(3) The date of use or occupation of the improvement.

judgment granted to a developer/general contractor on the ground that the plaintiffs had filed their complaints more than 10 years after the substantial completion of plaintiffs' homes. The trial court rejected plaintiffs' claim that the willful misconduct exception set out in subdivision (f) of section 337.15 precluded defendants' reliance on the 10-year limitation period.[2] The court held that plaintiffs had failed to provide evidence that the alleged acts of willful misconduct had been committed *directly* by the defendants or under their supervision.

In granting defendants' motion for summary judgment, the trial court acknowledged that plaintiffs had presented evidence of latent structural defects in their homes. Plaintiffs' experts had opined that such defects (1) involved deviations from the building code and government-approved construction plans, (2) involved efforts to achieve cost savings, (3) appeared to be the result of willful misconduct, and (4) could not be present in the houses absent either defendants' knowledge of them or defendants' reckless failure to inspect and supervise construction of the houses. Nonetheless, the court held that plaintiffs had not produced evidence that connected defendants to the actual construction of the homes in general, to the specific latent defects in particular, or to a failure to provide for supervision of construction.

Based on (1) the legal doctrine that subjects principals to liability for the wrongs of their agents committed in the course of the agency, (2) the principle, supported by both case and statutory law, that supervision of

"(4) One year after termination or cessation of work on the improvement.

"The date of substantial completion shall relate specifically to the performance or furnishing design, specifications, surveying, planning, supervision, testing, observation of construction or construction services by each profession or trade rendering services to the improvement." (Italics added.)

Section 337.15 prescribes the statutory *outside* date by which suit is to be brought. However, "[d]epending on the theory of recovery, a lawsuit alleging a latent defect in the construction of an improvement to real property must be brought within three or four years after the plaintiff discovers the defect, or should have done so. (See Code Civ. Proc., §§ 337, subd. 1, 338, subds. (b), (c); *Regents of University of California v. Hartford Acc. & Indem. Co.* (1978) 21 Cal.3d 624, 630 [147 Cal.Rptr. 486, 581 P.2d 197].)" (*Lantzy v. Centex Homes* (2003) 31 Cal.4th 363, 366 [2 Cal.Rptr.3d 655, 73 P.3d 517] (*Lantzy*).)

[2] Defendants contend this case is not really an *action* based on their alleged willful misconduct, and instead argue that the plaintiffs only pled willful misconduct as a means of avoiding the 10-year statute of limitations. Therefore, defendants urge, plaintiffs have no grounds for relying on the exception set out in subdivision (f). Defendants also assert that subdivision (f) was not even placed in issue because it is subdivision (e) not subdivision (f) that is mentioned in the operative complaint. We reject these arguments. The record reflects that (1) defendants' willful misconduct is alleged in the operative complaint, (2) a considerable amount of time and energy was devoted in and by the trial court to the issue of alleged willful misconduct, and (3) plaintiffs' experts testified as to a substantial number of very serious defects that, in their opinion, could only have resulted from willful misconduct by someone. Thus, it cannot reasonably be denied that plaintiffs' alleged claims include the charge that willful misconduct was involved in the construction of plaintiffs' houses.

construction is a nondelegable duty of developers and general contractors, (3) reasons of sound public policy and (4) the wording of the statute itself, we conclude that defendants may not successfully assert the 10-year limitations period set out in section 337.15 as a defense to this suit *if* the trier of fact determines that (1) there was willful misconduct involved in the construction of plaintiffs' homes, (2) such willful misconduct resulted in the alleged latent construction defects and (3) such willful misconduct was committed by the defendants or the facts and circumstances are such that the willful misconduct of others is appropriately chargeable to them. As we explain, we believe that plaintiffs have raised triable issues of fact on each of these points.

In order to succeed on a motion for summary judgment based on the claimed expiration of the 10-year limitation period set out in section 337.15, a defendant is not required to produce any evidence with respect to the willful misconduct exception in subdivision (f) unless and until the plaintiff has first produced some substantial evidence of the existence of such misconduct. Because plaintiffs, however, have produced such evidence, and it has not been conclusively rebutted by defendants, the trial court erred in granting summary judgment.[3]

## *FACTUAL AND PROCEDURAL BACKGROUND*

This construction defect action was initiated by a complaint filed on behalf of 59 plaintiffs. The majority of them appeal (No. B163118) from a summary judgment entered in favor of defendants Glenfed Development Corporation and Glenfed Development Ventures Corporation (defendants).[4] Defendants, in turn, have filed appeals from the summary judgments granted to the subcontractors that were named as cross-defendants in defendants' cross-complaint for indemnification, breach of contract and warranties, and willful misconduct (Nos. B165374 and B169517). The subcontractors were granted summary judgment after the trial court determined that the defendants had no

---

[3] Additionally, we necessarily must resolve one other matter. We must reverse the summary judgments granted to some of the subcontractors who were sued as cross-defendants on defendants' cross-complaint for indemnity and other causes of action. Those judgments were only granted by the trial court because it had determined that since defendants were not liable to plaintiffs, the subcontractors, in turn, would have no liability to indemnify defendants.

[4] Apparently, defendants concede that the complaints of 12 of the plaintiffs were timely filed. Thus, they are not involved in the appeal. Our use of the term "plaintiffs" refers only to those plaintiffs who have appealed from the trial court judgment.

liability to plaintiffs for damages for the alleged construction defects;[5] in such circumstance, there was no basis to hold the subcontractors liable to defendants on the cross-complaint. Defendants appealed from those judgments as a precaution in case of a reversal of the judgment entered against plaintiffs.

### 1. *The Operative Complaint*

Plaintiffs filed this action on December 30, 1999. Although it was originally filed as a class action, class certification was later denied and the class allegations were stricken by the court. The operative (fifth amended) complaint (the complaint) alleges causes of action for strict liability, breach of express and implied warranties, negligence, and negligence per se. The focus of the complaint is defendants' development of plaintiffs' homes in a residential subdivision located in Palmdale, California. Defendants acted as *both* the developer and general contractor.

According to the complaint, defendants planned, developed, built, financed and/or sold plaintiffs' houses in or about 1989. The soil upon which the houses were constructed was improperly prepared, the concrete foundations of the homes were improperly prepared and constructed, and the damage to the respective houses has continuously existed since the date of construction. Structural framing in the houses was so negligently constructed as to constitute a defective and dangerous condition. As a result, substantial latent defects were created and caused to exist in the houses, and they continue to exist.

Plaintiffs alleged that the acts and omissions that caused such latent defects in their houses were the result of defendants' willful misconduct. Such deficiencies, which constitute the proximate cause of plaintiffs' damages, were not known by plaintiffs nor were they apparent by reasonable inspection; they were only determinable by expert analysis, including destructive testing. Defendants intended that the houses would be purchased by members of the public and used by them without inspection for latent defects; defendants knew or should have known that plaintiffs would rely on defendants' skill, judgment and expertise to see to it that the houses were reasonably

---

[5] The trial court's minute order granting summary judgment in favor of the subcontractors on defendants' cross-complaint referred to the grant of summary judgment in favor of defendants as to 47 of the plaintiffs and then stated, "[T]hat ruling also entitles the subcontractors to summary judgment against Glenfed on the Cross-Complaint *insofar as it seeks relief for Glenfed's possible liability to those 47 plaintiffs*." (Italics added.) The trial court appears to have recognized that its grant of relief to the subcontractors applied to less than all of the indemnity claims asserted by the defendants in their cross-complaint. Thus, it should have characterized the order as one for summary adjudication since all of the issues between defendants and the subcontractors were not thereby resolved. Such misnomer, however, is of no consequence in light of the result that we reach.

fit for their intended purpose and free of such defects; and defendants made such implied warranties about the houses. The failure of defendants to conform to their express warranties was known to defendants or should have been known to them because it was reasonably discoverable by defendants at the time the houses were constructed and sold to plaintiffs. To remedy and correct such defects will require extensive repair and replacement.

### 2. The Motions for Summary Judgment

#### a. The Moving Papers[6]

As a starting date for calculating the running of each plaintiff's 10-year limitation period, defendants used the respective dates of recordation of notices of completion for the plaintiffs' homes. (§ 337.15, subd. (g)(2).) According to defendants, the result of their calculations was that 47 of the 59 named plaintiffs were brought into the case (either by the original complaint or by subsequent amended complaints) more than 10 years after the limitation period commenced running as to their own particular house, and therefore their suits are barred by section 337.15.

#### b. Opposition to Defendants' Motion

Plaintiffs' opposition to defendants' motion was based on declarations from two experts who have worked on numerous construction defect cases, Tariq Shamma and Scott Vivian. After setting out their extensive experience in their respective fields,[7] the experts addressed latent construction defects in plaintiffs' houses that had been uncovered by destructive testing. The experts opined that most of the defects undermined the structural integrity of the homes and created a substantial risk of injury to persons and/or property.

The following is a sampling of the structural defects described by plaintiffs' experts: (1) horizontal attachments for vertical truss support members were not made in the garages, which created a risk of injury when a homeowner used the rafters for storage; this defect was readily visible to the expert eye and should have been recognized by defendants' construction supervisors; (2) the structural integrity of the houses was severely undermined by a failure to effect shear transfer; shear transfer allows buildings to

---

[6] Because the summary judgment/summary adjudication of issues motions brought by the subcontractor cross-defendants raise essentially the same statute of limitations issue raised by defendants in their motion papers, we will focus our discussion on the motion of the defendants.

[7] Tariq Shamma's experience is in civil and structural engineering and general contracting; Scott Vivian's experience is in general contracting and as CEO of a company that provides construction experts who examine structures to determine the extent, causes, and needed repairs of defects, if any.

withstand horizontal stresses such as are caused by wind and earthquakes; (3) there were inadequate or nonexistent holdowns on shear walls in the houses; the holdowns secure shear transfer members to structural members, and their absence means the structural integrity of the houses is severely undermined; (4) there "[was] a consistent pattern of inadequate or nonexistent installation of straps and hangers on load bearing members[; the] purpose of the straps and hangers was to secure load bearing members to each other[; t]he failure to properly install straps and hangers called for in the plans, and indeed, where any competent builder knows they are vitally necessary, severely [undermined] the structural integrity of the house"; (5) some driveways are short by as much as three and one-half feet, making it impossible to park a full-size vehicle in the driveway without blocking the sidewalk; (6) there were defects in the stucco; (7) 99 percent of the windows tested were not watertight and unreasonably leak; this condition was the result of a failure to use appropriate flashing; and (8) there was a failure to use self-adhering asphalt polyethylene sheeting around the windows, which was called for in the plans approved by the city; instead, less expensive sisal kraft paper was used.

Plaintiffs' experts opined that the defects: (1) involved conspicuous failures to comply with applicable building code provisions, with the city-approved building plans, and with basic construction industry practices; (2) were of a type that inevitably would have been recognized by any competent construction supervisor conducting even minimal day-to-day inspections of the type required in a construction project such as the one involved here, and would have caused the construction supervisor to require the responsible subcontractors to remedy the defects immediately, before work could proceed on the houses; and (3) had the financial impact of producing, in defendants' favor, substantial cost savings.

The experts were of the opinion that the defects were not negligently caused. That is, they were not the result of someone trying to do something correctly, but carelessly failing to do so. Rather, the defects appeared to be the result of willful misconduct by defendants in that they were "so serious and prevalent that they were either the result of [a] deliberate decision to 'cut corners' for cost savings or the result of a near total, virtually reckless, failure by the developer to adequately supervise subcontractors." The experts expressed the view that it was not reasonably possible for the builder, and the builder's contractors, agents and employees, to have failed to observe or been aware of the defects. "[The defects] are all things that could not possibly be present absent either the express or tacit approval of the builder or as a result of a complete failure by the builder to exercise even minimal supervision and conduct even minimal inspections of the work in progress." However, none of these defects would be apparent to the average home buyer or the average realtor when inspecting a home prior to purchasing it.

Forty of the plaintiffs each filed personal declarations stating that they had purchased their home with the understanding it was part of defendants' development and "had been built according to building codes using proper materials and building practices," and that their decision to buy their home was made in reliance on such representations, as well as on the written warranties provided by defendants. The plaintiffs also stated that although they had looked at their respective properties a number of times before they purchased them, they have no special training which would enable them to recognize defects like the ones on which this suit is based, and they did not recognize or observe such defects before they purchased their home, and only became aware of the defects shortly before they became plaintiffs in this suit.[8]

### c. *The Trial Court's Ruling on the Summary Judgment Motions*

The trial court issued a lengthy ruling and subsequent order on defendants' motion in which it concluded that defendants had met their burden of showing a complete defense to the plaintiffs' claims by demonstrating that their claims were barred by the 10-year limitation period set out in section 337.15. The trial court rejected plaintiffs' argument that an issue of fact existed as to the application of subdivision (f) of section 337.15. The court instead held that the undisputed material facts in plaintiffs' separate statement, which corresponded to the evidence in their experts' declarations, did not raise a triable issue of material fact on the question of defendants' alleged willful misconduct. The court concluded that defendants were therefore entitled to a summary judgment in their favor, and the subcontractors were necessarily also entitled to summary judgments on defendants' cross-complaint. Plaintiffs made a motion for reconsideration which the court denied. Thereafter, a judgment in favor of defendants was signed and filed.

---

[8] After the trial court took defendants' motion for summary judgment under submission, 20 of the plaintiffs filed an ex parte application for permission to file supplemental opposition. Such application was brought under section 473. The gist of the supplemental opposition was that the running of the 10-year statute of limitations was tolled when this suit was filed because it originally was filed as a class action, and the tolling period did not end until the class allegations were stricken by the trial court. According to these 20 plaintiffs, the effect of the tolling is that their suits were timely filed when they were added as plaintiffs, and thus their claims against defendants are not barred by the statute of limitations, even if it is determined that defendants have a right to assert the 10-year limitation period as a bar to the other plaintiffs' causes of action. The court denied the request to file supplemental opposition. Plaintiffs' subsequent motion for reconsideration was also denied. As we explain in footnote 19, *post*, we do not need to reach this issue.

Plaintiffs then filed this appeal (No. B163118);[9] and defendants have appealed from the two judgments granted to the subcontractors (Nos. B165374 and B169517).[10]

## ISSUES ON APPEAL

The initial question we must address is whether, when a defendant moves for summary judgment on the basis of section 337.15's statute of limitations, and the plaintiff's complaint has alleged willful misconduct in connection with latent construction defects, it is the defendant or the plaintiff who has the burden of producing evidence on that issue. The second and primary issue presented is whether a finding that willful misconduct by somebody has occurred in connection with the construction of a plaintiff's home, when such construction results in latent defects in the home, is sufficient to preclude a developer and general contractor's reliance on section 337.15, *even in the absence of evidence* that the developer and general contractor had *actual* knowledge of the willful misconduct or had itself *directly* engaged in such willful misconduct in some manner.

## DISCUSSION

### 1. Standard of Review of Orders Granting Motions for Summary Judgment

■ We conduct a de novo review of the order granting the respective motions for summary judgment. (*Price v. Wells Fargo Bank* (1989) 213 Cal.App.3d 465, 474 [261 Cal.Rptr. 735].) In doing so, we apply the same rules the trial court was required to apply in deciding those motions.

■ As the parties moving for summary judgment, defendants bore an initial burden of producing of a prima facie showing that there was no triable issue of material fact in the plaintiffs' case and that defendants were entitled to judgment as a matter of law. Only if defendants carried that burden were the plaintiffs then faced with a burden of production of their own—to make a prima facie showing of the existence of a triable issue of material fact. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850 [107 Cal.Rptr.2d 841, 24 P.3d 493] (*Aguilar*).) "A prima facie showing is one that is sufficient to support the position of the party in question. [Citation.] No more is called for." (*Id.* at p. 851.)

---

[9] Plaintiffs' notice of appeal states they are appealing from (1) the ruling on defendants' motion for summary judgment/summary adjudication of issues; and (2) the denial of plaintiffs' two motions for reconsideration. We will construe plaintiffs' appeal as having been taken from the summary *judgment* since *it* is appealable. (Code Civ. Proc., §§ 904.1, subd. (a) (1) & 437c, subd. (m)(1).)

[10] All three appeals have been consolidated for resolution in a single opinion.

"[F]rom commencement to conclusion, the party moving for summary judgment bears the burden of persuasion that there is no triable issue of material fact and that he is entitled to judgment as a matter of law. . . . There is a triable issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof. . . . Thus, a plaintiff [moving for summary judgment] bears the burden of persuasion that 'each element of' the 'cause of action' in question has been 'proved,' and hence that 'there is no defense' thereto. (Code Civ. Proc., § 437c, subd. ([p])(1).) A [moving] defendant [or cross-defendant] bears the burden of persuasion that 'one or more elements of' the 'cause of action' in question 'cannot be established,' or that 'there is a complete defense' thereto. (*Id.*, § 437c, subd. ([p])(2).)" (*Aguilar, supra,* 25 Cal.4th at p. 850, italics and fns. omitted.) "[H]ow the parties moving for, and opposing, summary judgment may each carry their burden of persuasion and/or production depends on *which* would bear *what* burden of proof at trial. [The California Supreme Court has] held to the effect that the placement and quantum of the burden of proof at trial [are] crucial for purposes of summary judgment. [Citation.]" (*Id.* at p. 851.)

██ Because a summary judgment denies the adversary party a trial, it should be granted with caution. (*Michael J. v. Los Angeles County Dept. of Adoptions* (1988) 201 Cal.App.3d 859, 865 [247 Cal.Rptr. 504].) Declarations of the moving party are strictly construed, those of the opposing party are liberally construed, and doubts as to whether a summary judgment should be granted must be resolved in favor of the opposing party. The court focuses on issue finding; it does not resolve issues of fact. The court seeks to find contradictions in the evidence, or inferences reasonably deducible from the evidence, which raise a triable issue of material fact. (*Id.* at pp. 865–866.)

### 2. *In Responding to Defendant's Motion, Plaintiffs Had the Burden of Production Respecting the Issue of Willful Misconduct*

"For purposes of motions for summary judgment and summary adjudication: [¶] . . . [¶] (2) A defendant or cross-defendant [moving for summary judgment] has met his or her burden of showing that a cause of action has no merit if that party has shown that one or more elements of the cause of action, even if not separately pleaded, cannot be established, or that there is a complete defense to that cause of action. Once the defendant or cross-defendant has met that burden, the burden shifts to the plaintiff or cross-complainant to show that a triable issue of one or more material facts exists as to that cause of action or a defense thereto." (§ 437c, subd. (p).)

██ A defendant moving for summary judgment based on an affirmative defense must present evidence that supports *each* element of its affirmative

defense, *which would also be its burden at trial.* (*Anderson v. Metalclad Insulation Corp.* (1999) 72 Cal.App.4th 284, 289 [85 Cal.Rptr.2d 331].) Here, defendants' affirmative defense was section 337.15's 10-year statute of limitations for latent construction defects, which defendants' separate statement of undisputed material facts sought to address by setting forth the date that the notice of completion for each plaintiff's home was recorded, and the date the respective homeowner was named as a plaintiff in this suit. On appeal, plaintiffs argue that defendants had the additional burden of producing evidence regarding the statutory prohibition against applying the 10-year statute in suits based on willful misconduct. (§ 337.15, subd. (f).) We disagree. With respect to the exception, plaintiffs, not defendants, had the burden of production, specifically, the burden of producing sufficient evidence to raise a triable issue of material fact as to whether their action was based on willful misconduct.

■ While subdivision (a) of section 337.15 provides a defendant with a 10-year statute of limitations affirmative defense, subdivision (f) of that statute *precludes* a court from applying such limitation period in the defendant's favor where the action is based on willful misconduct. Willful misconduct is an *exception* to the 10-year limitation period, and plaintiffs would bear the burden of production and persuasion at trial regarding the issue of willful misconduct since it is they who are asserting the exception. (Cf. *Hobart v. Hobart Estate Co.* (1945) 26 Cal.2d 412, 437 [159 P.2d 958].) That plaintiffs may have anticipated defendants' reliance on a limitations defense by alleging facts supporting a statutory exception to that defense is not sufficient to justify shifting the burden that otherwise would be imposed on plaintiffs.

Therefore, once defendants met their burden of production on their statute of limitations affirmative defense, the burden of production shifted to plaintiffs to raise a triable issue of material fact on the matter of willful misconduct. (§ 437c, subd. (p)(2).) As we observed above, a party's burden of production and/or persuasion with respect to a summary judgment motion is dependent on its burden of proof at trial. (*Aguilar, supra,* 25 Cal.4th at p. 851.)

3. *The Nature of "Willful Misconduct"*

In *Ewing v. Cloverleaf Bowl* (1978) 20 Cal.3d 389, 402 [143 Cal.Rptr. 13, 572 P.2d 1155], the Supreme Court stated: " '[W]illful misconduct implies the intentional doing of something either with knowledge, express or implied, that serious injury is a probable, as distinguished from a possible, result, or the intentional doing of an act with a wanton and reckless disregard of its consequences.' " (Accord, *Potter v. Firestone Tire & Rubber Co.* (1993) 6 Cal.4th 965, 1016 [25 Cal.Rptr.2d 550, 863 P.2d 795] (conc. and dis. opn. of Kennard, J.).)

As defendants and amici curiae supporting their position emphasize, section 337.15 was enacted in 1971 by the Legislature to provide a "firm and final" outside limitation period for construction suits involving claims for latent defects. (*Lantzy, supra,* 31 Cal.4th at p. 377.) " '[T]he purpose of section 337.15 is to protect contractors and other professionals and tradespeople in the construction industry from perpetual exposure to liability for their work. [Citations.] The statute reflects a legitimate concern that "expanding concepts of liability could imperil the construction industry unless a statute of limitations was enacted." [Citation.] Such concerns legitimately include the prohibitive cost of insurance against a perpetual and never ending risk' [Citation.]" (*Id.,* at p. 374.)[11] The Legislature, however, included an exception to this "firm and final" outside limitation period. In subdivision (f) of section 337.15, any action based on either willful misconduct or fraudulent concealment was *expressly* excluded. The issues before us involve the former.

Unfortunately, there is little case authority discussing willful misconduct as the term is used in section 337.15, subdivision (f). The Supreme Court, however, did recently discuss generally the issue of liability for willful or wanton behavior. (*Calvillo-Silva v. Home Grocery* (1998) 19 Cal.4th 714 [80 Cal.Rptr.2d 506, 968 P.2d 65], disapproved on another ground in *Aguilar, supra,* 25 Cal.4th at p. 853, fn. 19 (*Calvillo-Silva*).) It noted that "the case law appears relatively uniform on the following points. First, it is generally recognized that willful or wanton misconduct is separate and distinct from negligence, involving different principles of liability and different defenses. [Citations.] Unlike negligence, which implies a failure to use ordinary care, and even gross negligence, which connotes such a lack of care as may be presumed to indicate a passive and indifferent attitude toward results, willful misconduct is not marked by a mere absence of care. Rather, it ' " 'involves a more positive intent actually to harm another or to do an act with a positive, active and absolute disregard of its consequences.' " ' [Citations.] So, for example, a person who commits an assault and battery may be guilty of willful misconduct [citations], but a person who fails to perform a statutory duty, without more, is not guilty. [Citations.] While the word 'willful' implies an intent, the intention must relate to the misconduct and not merely to the fact that some act was intentionally done. [Citations.] Thus, even though some cases of negligence may involve intentional actions, the mere intent to do an act which constitutes negligence is not enough to establish willful misconduct. [Citations.] [¶] Second, willfulness generally is marked by three characteristics: (1) actual or constructive knowledge of the peril to be apprehended; (2) actual or constructive knowledge that injury is a probable,

---

[11] The *Lantzy* court denied judicial approval for any tolling of the 10-year limitation period *except as was expressly set out in section 337.15.* The opinion provides a comprehensive review of the legislative history of that section and we need not repeat it here. (See *Lantzy, supra,* 31 Cal.4th at pp. 373–379.)

as opposed to a possible, result of the danger; and (3) conscious failure to act to avoid the peril. [Citations.] As the foregoing suggests, willful misconduct does not invariably entail a subjective intent to injure. It is sufficient that a reasonable person under the same or similar circumstances would be aware of the highly dangerous character of his or her conduct. [Citations.]" (*Calvillo-Silva, supra,* at pp. 729–730; see also *Ewing v. Cloverleaf Bowl, supra,* 20 Cal.3d at p. 402; *Shell Oil Co. v. Winterthur Swiss Ins. Co.* (1993) 12 Cal.App.4th 715, 742–743 [15 Cal.Rptr.2d 815].) "Ordinarily whether an action constitutes willful misconduct is a question of fact." (*Colich & Sons v. Pacific Bell* (1988) 198 Cal.App.3d 1225, 1242 [244 Cal.Rptr. 714].)[12]

In the only California appellate decision that we have been able to find expressly discussing this issue, the court had before it facts remarkably similar to those presented here. A defendant builder had sold to plaintiffs a home that had been built over an oil sump. After subsidence caused considerable damage, the plaintiffs filed suit about 12 years after the "substantial completion" of the home (plaintiffs had only owned it for about nine years). The defendant builder responded with a motion for summary judgment relying on the 10-year limitation period set out in section 337.15, subdivision (a). In opposition, the plaintiffs submitted the declaration of their expert, a general contractor who had inspected the foundation to their home. After describing the tests that had been conducted, the expert's declaration expressed the opinion "that it would have been impossible to pour the foundation of the home without seeing the evidence, in plain view, that the lot was over an oil sump. The evidence was so clear, according to [the expert], that 'it makes me of the opinion that there was a conscious effort to ignore this condition.' " (*Felburg v. Don Wilson Builders* (1983) 142 Cal.App.3d 383, 390 [191 Cal.Rptr. 92].)

The *Felburg* court concluded that the entire record (including other evidence of the sump's existence, as well as the expert's declaration) raised a triable issue of fact as to the builder's knowledge of the presence of the sump and his possible concealment thereof with fraudulent intent. In concluding that a factual question was presented as to the application of the willful misconduct exception, the court noted, "[i]nsofar as we have been able to discover, there is no published decision assessing the impact of subdivision (f) of section 337.15, which excepts from its application 'actions based on

---

[12] In a worker's compensation case involving a claim of "serious and [willful] misconduct," the Supreme Court noted: "Whether in any given case serious and [willful] misconduct is shown, inherently presents questions of both fact and law. Insofar as the issues may relate to the credibility of witnesses, the persuasiveness or weight of the evidence and the resolving of conflicting inferences, the questions are of fact. But as to what minimum factual elements must be proven in order to constitute serious and [willful] misconduct, and the sufficiency of the evidence to that end, the questions are of law." (*Mercer-Fraser Co. v. Industrial Acc. Com.* (1953) 40 Cal.2d 102, 115 [251 P.2d 955].)

willful misconduct or fraudulent concealment'—these are not barred by the 10-year statute. In the instant case, plaintiffs pleaded these elements, willful misconduct and fraudulent concealment, in the first, second and particularly the third causes of action against developer Wilson. The term 'willful misconduct' as used in the statute encompasses not only intentional wrongdoing, but negligence of such a character as to constitute reckless disregard for the rights of others." (*Felburg v. Don Wilson Builders, supra,* 142 Cal.App.3d at p. 391.)[13]

■ At a minimum, *Felburg* illustrates the proposition that a contractor or developer cannot avoid application of section 337.15, subdivision (f), by a claim of ignorance of the existence of a serious latent defect where the evidence permits the reasonable inference that he knew or should have known otherwise.[14]

4. *Plaintiffs Presented Sufficient Evidence to Raise a Triable Issue of Material Fact Regarding the Application of the Willful Misconduct Exception*

The trial court acknowledged the depth of the information in plaintiffs' experts' declarations regarding the presence of serious latent structural defects in plaintiffs' houses that undermine the structural integrity of the homes and create a substantial risk of injury to persons and/or property. However, the court found there was no evidence "to explain [defendants'] connection to the construction of [plaintiffs'] homes in general, or . . . the specific defects in particular."

The court ruled that plaintiffs had failed to specifically connect defendants with the willful misconduct that plaintiffs' experts opined took place during construction. That is, plaintiffs failed to show that either (1) defendants themselves engaged in the actual construction or supervision of construction of the homes such that defendants had to have observed the defects but chose to ignore them, or (2) defendants were responsible for supervision of

---

[13] We cite the *Felberg* decision because of the similarity of its factual context to that of the case before us and to illustrate the dearth of authority on the issues presented. We take the *Felberg* court's reference to "negligence" as an inadvertent choice of words, given that *Felberg* cited to *Ewing v. Cloverleaf Bowl, supra,* 20 Cal.3d at page 402. As the Supreme Court, in both *Ewing* and *Calvillo-Silva, supra,* 19 Cal.4th at pages 729–730, pointed out, more is required. We in no way rely upon this statement by the *Felberg* court, but rather apply the principles set out in *Ewing* and *Calvillo-Silva.*

[14] Interestingly, the *Felburg* court speculated about this issue when it noted that "[i]t may be that developer . . . can persuade a jury that a subcontractor was the actual culprit in this egregious situation, but the issue of whether the subcontractor's knowledge could be reasonably imputed to [the developer] is also a question of fact." (*Felburg v. Don Wilson Builders, supra,* 142 Cal.App.3d at p. 392.)

construction, but failed to carry out their supervisory duties. Based on such lack of evidence, the court stated that a trier of fact could not infer willful misconduct *by defendants* in connection with the defects. On that basis, the court concluded plaintiffs' claims against defendants were, as a matter of law, barred by the 10-year statute of limitations set out in section 337.15. In our view, the record in this case, and a proper construction and application of the statute, compel a contrary conclusion.

The record before us demonstrates that the defendants, acting in their capacity as general contractor and developer, hired subcontractors to construct the homes purchased by the plaintiffs. Defendants essentially argue that whatever willful misconduct may have occurred in the construction process was done by such subcontractors and there was no evidence produced by plaintiffs demonstrating that defendants had any knowledge of or participation therein. This argument, however, fails to recognize the legal significance of the position occupied by a general contractor/developer in a residential construction project such as we find in this case.

a. *General Contractor/Developer Is Liable for Acts of Subcontractors*

A developer of mass-produced homes is strictly liable for defects in the construction of such homes. (*Kriegler v. Eichler Homes, Inc.* (1969) 269 Cal.App.2d 224, 227–229 [74 Cal.Rptr. 749].)[15] Although subcontractors may be independent contractors when working for the general contractor or the owner of property on which mass-produced residential units are being built, the owner or the general contractor is still liable for damages caused by defects in such work. (*Muth v. Urricelqui* (1967) 251 Cal.App.2d 901, 907

---

[15] The terms "developer" and "contractor" are discussed in *Ranchwood Communities Limited Partnership v. Jim Beat Construction Co.* (1996) 49 Cal.App.4th 1397 [57 Cal.Rptr.2d 386]. "In some cases, a contractor who is also an owner-builder may have the responsibilities of a 'developer.' [Citation.] In general, though, '[t]he rules of liability applicable to a contractor are different from those placed on the developer.' [Citation.] A contractor may be held liable for negligence (his own and his subcontractors'), implied warranty, and in some cases fraud. [Citation.] [¶] In contrast, a developer may be held liable for defective construction on a strict liability theory, as well as theories of negligence, breach of warranty, nuisance, and fraud or negligent misrepresentation. [Citations.] Whether a residence falls within the category of a mass-produced home, such that strict liability for construction defects may be imposed, is a question which must be determined on a case-by-case basis. [Citation.]" (*Id.* at p. 1414.)

In this case, there is no contention that plaintiffs' homes were *not* mass produced; and plaintiffs have alleged theories of recovery that include negligence and breach of warranty as well as strict liability. The focus of defendants' motion for summary judgment was whether they were entitled to rely on the 10-year statute of limitations, not whether they would otherwise be liable to plaintiffs for any latent construction defects in plaintiffs' homes but for the expiration of such limitations period.

[60 Cal.Rptr. 166].) In *Muth*, the Muths were general contractors who sued three of their subcontractors for indemnity after they (the Muths) were found liable, in a prior action, to persons who had purchased a house built by the Muths. The house suffered damages because of a landslide and subsidence. The subcontractors were the soils engineer, civil engineer, and the grading contractor, and they acted as independent contractors in that they were not directed or supervised by the Muths in performing their subcontract work. (*Id.* at pp. 904–905, 907, 910.) The *Muth* court stated that despite this independent contractor status, the Muths, as owners of the tract of land used for the subdivision and as general contractors, "could not escape liability for the damage to the [buyer of the house] by seeking refuge in the defense that the damages were proximately caused by the negligence of one or more of their subcontractors." (*Id.* at p. 907.)

The obvious reason for this rule is that owners and general contractors have supervision over the construction, including the work of the subcontractors. "It has been held that the *owner* of property cannot escape liability for a dangerous condition on his property by having an independent contractor assume the duty of constructing or repairing a building or chattel. [Citations.] There is no reasonable distinction between the owner's inability to escape liability and that of the contractor. The contractor, equally with the owner of the property, has supervision over the entire building and its construction, including the work performed by a subcontractor, and where he negligently creates a condition, either by himself or through a subcontractor, he is primarily responsible for that condition and the consequences that may follow from it. He is in full control of the construction and knows or should know what is being placed in the building." (*Dow v. Holly Manufacturing Co.* (1958) 49 Cal.2d 720, 725 [321 P.2d 736]; accord, *Muth v. Urricelqui, supra,* 251 Cal.App.2d at p. 907.) Such supervisory obligation is a nondelegable duty and cannot be avoided by entrusting it to an independent contractor. (Cf. *Finnegan v. Royal Realty Co.* (1950) 35 Cal.2d 409, 433 [218 P.2d 17].) This conclusion is supported by relevant statutory law.

### b. *Supervisory Obligations of General Contractor/Developer Are Consistent With Licensing Statutes*

■ Provisions in the Business and Professions Code regarding the licensing of contractors make this point. The defendants in this case, in their capacity as the general contractor, were required to be licensed (as were their subcontractors). (*Vallejo Development Co. v. Beck Development Co.* (1994) 24 Cal.App.4th 929, 941 [29 Cal.Rptr.2d 669].) In California, contractors' licenses may be issued to individuals, to copartnerships, and to corporations. An individual can qualify for a license either in his own capacity or by a qualifying person acting as a responsible managing employee (RME). A

copartnership or limited partnership can qualify for a license either by a general partner or a qualifying person acting as an RME, and a corporation can qualify by a qualifying person acting as an RME or a responsible managing officer (RMO). (Bus. & Prof. Code, §§ 7065, 7068, subd. (b).)

The licensing law has as its purpose to protect the public from incompetent and dishonest construction and building services, such that the law " 'provide[s] minimal assurance that all persons offering such services in California have the requisite skill and character, understand applicable local laws and codes, and know the rudiments of administering a contracting business.' " (*Ranchwood Communities Limited Partnership v. Jim Beat Construction Co.*, *supra*, 49 Cal.App.4th at p. 1409.) Thus, the Contractors' State License Board requires an applicant for a license to "show such degree of knowledge and experience in the classification applied for, and such general knowledge of the building, safety, health, and lien laws of the state and of the administrative principles of the contracting business as the board deems necessary for the safety and protection of the public." (Bus. & Prof. Code, § 7068, subd. (a).) Additionally, disciplinary action against a license may be taken for, among other things, a "willful departure in any material respect from accepted trade standards for good and workmanlike construction" (Bus. & Prof. Code, § 7109, subd. (a)), and for "[w]illful or deliberate disregard and violation of the building laws of the state, or of any political subdivision thereof" (Bus. & Prof. Code, § 7110).

Most significantly, provisions of the Business and Professions Code require that the RME or RMO who qualifies for a contractor's license on behalf of an individual or business firm is "responsible for exercising that *direct supervision and control* of his or her employer's or principal's construction operations as is necessary to secure full compliance with the provisions of this chapter [on contractors] and the rules and regulations of the board relating to the construction operations." (Bus. & Prof., § 7068.1, italics added.) California Code of Regulations, title 16, section 823, subdivision (b) provides that "[f]or purposes of Section 7068.1 of the [Business and Professions] Code, '*direct supervision and control*' includes any one or any combination of the following activities: supervising construction, managing construction activities by making technical and administrative decisions, checking jobs for proper workmanship, or direct supervision on construction job sites." (Italics added.) Therefore, as a person acting on behalf of his or her contractor principals, the RME or RMO would be in a position to observe willful misconduct in the construction of houses. Having observed such misconduct, he or she would have a duty to report it to the contractor, since the purpose of the licensing laws is protection of the public. Finally, under

Civil Code section 2332,[16] the contractor is deemed to have notice of the misconduct even if not informed of it by the RME or RMO. With this notice, the contractor would have a duty to rectify the problem. This duty of supervision imposed by the statutory licensing scheme, like the above discussed duty of supervision imposed by case law, is reasonably viewed as a nondelegable duty and the general contractor is not relieved of the supervisory duties by entrusting them to an independent contractor. (*Finnegan v. Royal Realty Co.*, *supra*, 35 Cal.2d at p. 433.)

> c. *Principles of Sound Public Policy Support Holding a General Contractor/Developer Responsible for Any Willful Misconduct Involved in a Construction Project*

■ As already mentioned, developers of mass produced homes are strictly liable for construction defects regardless of the developer's active fault. (*Kriegler v. Eichler Homes, Inc.*, *supra*, 269 Cal.App.2d at pp. 227–229.) The developer is thus held to be, as a matter of law, the absolute guarantor of the work done by the subcontractors it chooses. There is no sound public policy reason to deviate from this well-established principle when the question is extending the statute of limitations applicable to those defects as opposed to imposing monetary liability for the defects. In both instances, it is the developer " 'who is in the better economic position to bear the loss rather than . . . the injured party who justifiably relied on the developer's skill and implied representation.' " (*Id.* at p. 228.) To hold that the developer is not subject to the provisions of § 337.15, subdivision (f), because the willful misconduct was committed by its chosen subcontractors would allow the developer to escape the strict liability established by *Kriegler*.

Moreover, imputing the subcontractor's willful misconduct to the developer is not only consistent with the policies underlying *Kriegler*, it is also fully consistent with general principles of respondeat superior, which hold a principal liable not just for the negligence of an agent but for intentional acts of the agent so long as the misconduct occurs within the course and scope of the agency. (Civ. Code, § 2338;[17] *Mary M. v. City of Los Angeles* (1991) 54 Cal.3d 202, 208–210 [285 Cal.Rptr. 99, 814 P.2d 1341].) Indeed, while defendants and the amici curiae supporting their position claim that it would

---

[16] Civil Code section 2332 provides: "As against a principal, both principal and agent are deemed to have notice of whatever either has notice of, and ought, in good faith and the exercise of ordinary care and diligence, to communicate to the other."

[17] Civil Code section 2338 provides: "Unless required by or under the authority of law to employ that particular agent, a principal is responsible to third persons for the negligence of his agent in the transaction of the business of the agency, including wrongful acts committed by such agent in and as a part of the transaction of such business, *and for his willful omission to fulfill the obligations of the principal*." (Italics added.)

be unfair to impute willful misconduct by an agent to an "innocent" principal for purposes of tolling a limitations period, such a result would not be a novel one. In *Lightner Mining Co. v. Lane* (1911) 161 Cal. 689 [120 P. 771], the Supreme Court noted that "[t]he fraud of the agents will be imputed to the principal for the purpose of preventing the running of the statute of limitations whether the principal was aware of it or not." (*Id.*, at p. 703.)

 Subdivision (f) of section 337.15 is an incentive to developers and general contractors to engage in close supervision of their projects so that willful misconduct can be avoided even if simple negligent construction defects cannot. It is an incentive for the general contractor and the developer to choose subcontractors carefully, with an eye toward quality construction rather than just the bottom line. Indeed, at the legislative hearings on the enactment of section 337.15, the representative from the North Coast Builders Exchange, the Builders Exchange Legislative Counsel and the California State Builders Exchange testified he was of the opinion that willful violations in the construction industry were "a very minor thing" and this was because "it's been economically weeded out," there is a reduced number of licensed contractors in California, the industry was policing itself, and the licensing board was "quite effective."

Moreover, as a matter of public policy, when a developer or general contractor receives the economic benefits of the willful misconduct associated with the construction of an improvement to real property, *then as between the innocent third party purchaser of the improvement and the developer or general contractor*, the purchaser should not be required to bear the burdens associated with such misconduct. Nothing in section 337.15 suggests otherwise. We note, with emphasis, that subdivision (f) states only that the 10-year limitation period "shall not apply to *actions* based on willful misconduct or fraudulent concealment" (italics added), *and this case is clearly based on plaintiffs' allegations of willful misconduct* by either defendants or parties hired by defendants to construct defendants' residential building project. Given that statutory language, it is only necessary that the action be based on and arise from willful misconduct by *someone*. It does not matter whether defendants committed such misconduct directly or it was done by subcontractors hired by them.

### d. *Conclusion*

 We have no trouble concluding that a defendant, acting as the developer and general contractor, can be held liable after 10 years for the willful misconduct of others involved in the project, because: (1) subdivision (f) of section 337.15 does not specifically exclude a general contractor or a developer; (2) the rules regarding vicarious liability of principals are an

overlay on this action; (3) case and statutory law include supervisory requirements for developers and contractors, and the RMO's and RME's of licensed contractors; (4) public policy considerations fully support such conclusion; and, perhaps most significantly, (5) subdivision (f), by its terms, applies to an "action"; it is not limited to the conduct of the specific defendant seeking to assert a limitations defense. The result we reach is not a judicially created *extension* or *expansion* of liability; it merely represents an application of the relevant body of law to an express statutory *exception* to the "firm and final" 10-year limitation on a contractor's liability exposure for latent defects. Nothing in the language of section 337.15 indicates the Legislature intended to dispense with the doctrines of vicarious liability and nondelegable duties, nor with the statutory responsibilities of contractors for supervision of their work, when a defendant developer or general contractor claims a right to the 10-year limitation provision and the plaintiff asserts the willful misconduct exception to the application of that provision.

There is evidence in this record, if believed by a trier of fact, that would support findings that (1) willful misconduct had occurred in the construction of plaintiffs' homes and that such misconduct had caused the construction defects of which plaintiffs complain, and (2) defendants, as the developer/general contractor for the project where plaintiffs' homes were constructed, (a) had at least constructive knowledge of the peril created by the construction activity and the resulting defects, (b) had at least constructive knowledge that injury or damage to future homebuyers (such as plaintiffs) was a probable, as opposed to a possible, result of the defects created by the construction activity, and (c) consciously failed to take action to avoid such injury or damage. Under the principles articulated in *Calvillo-Silva, supra,* 19 Cal.4th at pages 729–730, such findings would support the conclusion that willful misconduct had occurred in the construction of plaintiffs' homes and had caused plaintiffs' damages and that defendants were liable therefore.

We find that plaintiffs produced sufficient evidence on the question of willful misconduct to defeat defendants' summary judgment motion. Whether the defendants or their subcontractors actually engaged in acts of willful misconduct, whether the latent defects of which plaintiffs complain resulted from such acts, and whether the facts and circumstances presented at trial are sufficient to justify charging defendants with such willful misconduct under the legal principles discussed above, are all matters that must be resolved by the trier of fact upon remand.[18]

---

[18] This case is not similar to those that address vicarious liability for injuries to the *employees* of an independent contractor that one has hired. Defendants point out that the hirer of the independent contractor is not vicariously liable under the peculiar risk doctrine for injuries sustained by employees of the contractor (*Privette v. Superior Court* (1993) 5 Cal.4th 689, 698 et seq. [21 Cal.Rptr.2d 72, 854 P.2d 721]; *Toland v. Sunland Housing Group, Inc.*

### 5. The Judgments in Favor of Certain Cross-defendants Will Be Reversed

It is clear to this court, from our review of the appellate record, that the trial court's sole basis for granting the subcontractors' motions for summary judgment on defendants' cross-complaint was the court's decision to grant defendants' motion for summary judgment on plaintiffs' complaint. That is, the trial court determined that because section 337.15 precluded the appealing plaintiffs from asserting liability against defendants, defendants in turn had no basis for claiming a right to relief from the subcontractor cross-defendants, and therefore the subcontractors were entitled to summary judgment on defendants' cross-complaint. Defendants' appeal from the summary judgments granted to the subcontractor cross-defendants, which defendants filed in their capacity as cross-complainants, was only a protective appeal. It was filed to preserve defendants' ability to further prosecute their cross-complaint against the subcontractors in the event we reverse the summary judgment granted to defendants. Because we have determined that defendants were not entitled to summary judgment against the plaintiffs, it necessarily follows that the trial court's granting of summary judgments to the cross-defendants must also fall.

We will reverse the summary judgments from which defendants appealed and remand the case for further proceedings on the operative complaint[19] and

---

(1998) 18 Cal.4th 253, 256–257 [74 Cal.Rptr.2d 878, 955 P.2d 504]), and is not vicariously liable to the contractor's employees under the negligent hiring doctrine (*Camargo v. Tjaarda Dairy* (2001) 25 Cal.4th 1235, 1238 [108 Cal.Rptr.2d 617, 25 P.3d 1096]), and is only liable for injuries to the contractor's employees if the hirer retains control over the instrumentality causing the injury and exercised such control so as to affirmatively contribute to the injury (*Hooker v. Department of Transportation* (2002) 27 Cal.4th 198, 202 [115 Cal.Rptr.2d 853, 38 P.3d 1081]). The absence of liability addressed in *Privette, Toland* and *Camargo* is based on the inequity that would result if the subcontractor could avoid liability under worker's compensation law but the hirer were nevertheless held liable. (*Hooker*, at pp. 205–206.)

In relying on those cases, defendants are comparing apples with oranges. The instant case involves allegations of willful misconduct, perhaps by a subcontractor, that impacts innocent third persons who have no contractual relationship with the subcontractors. There would be nothing inequitable about holding defendants liable for the acts of their subcontractors who, in turn, would be answerable to the defendants' cross-complaint.

[19] We have not reached or resolved the class action/tolling issue raised by 20 of the plaintiffs who argue that, because of such tolling, their complaints were timely filed. In light of our reversal of the defendants' summary judgment and the remand for further proceedings, the question is premature. In the event that the trial court, upon remand, finds no factual support for plaintiffs' claim of willful misconduct, then the tolling claims should be addressed as to those plaintiffs asserting them.

cross-complaint.[20] While some of the cross-defendants assert there is a substantive basis for granting their motions for summary judgment, one that is separate and distinct from the reason on which the trial court relied to grant them such relief, such additional ground or grounds should be addressed in the first instance by the trial court upon remand.[21]

## *DISPOSITION*

The summary judgment granted on plaintiffs' complaint in No. B163118 and the summary judgments granted on defendants' cross-complaint in Nos. B165374 and B169517 are reversed and the cause is remanded for further proceedings consistent with the views expressed herein. Costs on appeal to plaintiffs. All other parties shall bear their own appellate costs.

Klein, P. J., and Kitching, J., concurred.

Petitions for a rehearing were denied May 16, 2005, May 18, 2005, and May 26, 2005. The petition of defendants and respondents for review by the Supreme Court was denied July 13, 2005. George, C. J., did not participate therein. Baxter, J., was of the opinion that the petition should be granted.

---

[20] Cross-defendants Golden State Drywall, Inc., and Simpson's Finish Carpentry have filed a respondent's brief in the appeals taken by defendants/cross-complainants. However, it is not clear why they have done so since the judgments from which the appeals were taken do not include these two cross-defendants.

[21] Cross-defendants Keller Plaster, Inc., and Falconer Brothers, Inc., doing business as Falconer Insulation and Drywall, contend that we should dismiss defendants/cross-complainants' appeal as to them on the ground that the summary judgment entered in their *favor* was mistakenly entered because their motions "did not dispose of all issues with [defendants/cross-complainants]." However, they do not assert that the judgment should be *reversed*. Quite the contrary; they contend the judgment "should stand." It hardly bears stating that their position is logically untenable and patently unfair.

Similarly, cross-defendants Letner Roofing Company, Inc., and Vineyard Roofing, Inc., assert that (1) they only moved for summary adjudication, (2) the order granting their motion for summary adjudication is not an appealable order, and therefore (3) defendants'/cross-complainants' appeal should be dismissed. Their argument ignores the fact that a judgment was entered in their favor on October 24, 2003. Later in their brief however, they assert "the judgment should stand." The apparent upshot of this latter statement is that the appeal should be dismissed *and* the judgment in their favor "should stand," again, an untenable and unfair position.

Obviously, however, any cross-defendants not shown to have been implicated in any acts of willful misconduct would have a meritorious argument for a judgment in their favor under section 337.15.