Filed 4/21/14  Wandel v. Centex Homes CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| KENNETH M. WANDEL AND CATHERINE P. WANDEL, as individuals and co-trustees of The Wandel Family Trust 2010,<br><br>Plaintiffs and Appellants,<br><br>v.<br><br>CENTEX HOMES, a Nevada General Partnership,<br><br>Defendant and Respondent. | 2d Civil No. B250346<br>(Super. Ct. No. 56-2011-00400682-CU-CD-SIM)<br>(Ventura County) |

Kenneth M. Wandel and Catherine P. Wandel appeal from the judgment entered after the trial court granted a motion for summary judgment filed by Centex Homes, respondent.  Appellants purchased a newly constructed home from respondent.  After the expiration of the 10-year statute of limitations (Code Civ. Proc. § 337.15),[1] they brought a construction defect action against respondent.  Appellants make two contentions: first, that the statute of limitations does not apply because the evidence raises a triable issue of fact whether their action is based on respondent's willful misconduct or fraudulent concealment; second, that the evidence raises a triable issue of fact whether respondent is equitably estopped from asserting the statute of limitations.  We conclude that the first

---

[1] All statutory references are to the Code of Civil Procedure.

contention lacks merit but that the second contention is meritorious. Accordingly, we reverse.

*Background*

In October 1999 the parties signed a real estate sales contract. Respondent agreed to sell to appellants a home (the property) that it was building in a development in Simi Valley. The purchase price was $676,580. On April 11, 2000, respondent recorded a Notice of Completion for the property.

The rear yard of the property was on a slope that respondent had graded. In 2001 appellants " 'were informed by their landscaper that the slope appeared to show signs of creeping apparently resulting in soil movement to the Property and its building pads.' " Respondent repaired the slope.

In March 2002 respondent sent a form letter to appellants and other homeowners in the project that respondent had developed. The letter stated: "We are working as diligently as we can to correct the problems in each home. . . . [¶] Our commitment is firm. We will keep our promise - we will fix the homes we built. We will not stop until each home is fixed." Respondent noted that, "[a]fter the Los Angeles Times ran an article about the neighborhood and our efforts, we heard that lawyers who offered to sue us on your behalf contacted some of you." Respondent requested that homeowners not hire a lawyer: "If there is something wrong in your home, please give us the opportunity to fix it. We will do it the right way and the repairs will be completed faster than through a lawsuit. You do not need to hire a lawyer to make us do so."

In February 2007 respondent retained a geotechnical engineering consultant to inspect the property. During the inspection, appellants "reported observing cracking in the floor slab" and other defects.

In 2008 appellants informed respondent that new cracks had appeared in the pool that appellants had built on the property. In a letter to appellants dated May 27, 2010, respondent stated: "No additional testing or repairs will be performed" for the following reason: "Our investigation has determined that part of the footing for your pool is within the minimum setback from the top of the slope and that part of the structure built in the

2

back yard is within the no build zone of the property. The setback area and no build zone were disclosed to you, in writing, at the time of sale." Appellants claim, and respondent does not dispute, that the letter was sent to appellants "[o]n June 25, 2010 via electronic mail." This date was more than 10 years after the recording of a Notice of Completion for the property.

On December 2, 2010, appellants hired M3 Civil, Inc. (M3), a consulting civil engineer, land planner, and land surveyor. Appellants received M3's report "in late February 2011." The report stated that respondent's letter dated May 27, 2010, "is both deceptive and erroneous." M3 concluded that "[t]he Site Pad and Fill Slope were not built within the required permit conditions and approved supporting professional reports, plans and recommendations. [¶] . . . [¶] No portion of the pool and/or pool house is located within the 'no build' Restricted Use Area. [¶] All minimum . . . structural setback requirements have been met for both the pool and pool house . . . ." M3 recommended that, "at a minimum," respondent "[s]tabilize the descending slope" and "[r]epair/replace the pool/spa, pool house and pool decking in like new condition and per industry standards." Appellants declared that they had "received a seven figure estimate to carry out M3's recommendations."

In July 2011, more than four months after receiving M3's report, appellants retained counsel to represent them in an action against respondent. On July 19, 2011, approximately 13 months after the receipt of respondent's letter dated May 27, 2010, appellants filed a complaint against respondent. The operative pleading is the first amended complaint, dated September 14, 2011. It consists of six causes of action: negligence, strict liability, fraud, negligent misrepresentation, breach of written contract, and breach of implied warranty of merchantability. The complaint seeks damages in excess of $300,000.

Respondent moved for summary judgment on the ground that appellants' action was barred by the 10-year statute of limitations of section 337.15. Appellants argued that they fell within an exception to section 337.15 for "willful misconduct or fraudulent

3

concealment." (*Id*., subd. (f).)  Appellants also argued that respondents were equitably estopped from asserting the statute of limitations.

*Statute of Limitations and Equitable Estoppel*

"[A] lawsuit alleging a latent defect in the construction of an improvement to real property must be brought within three or four years after the plaintiff discovers the defect, or should have done so.  [Citations.]  However, a 1971 statute established a further general rule that no action for latent construction defects may be commenced more than 10 years after 'substantial completion' of the construction project.  (§ 337.15; as enacted by Stats.1971, ch. 1569, § 1, p. 3149.)  This 'absolute' 10–year limitations period applies regardless of when the defect was discovered.  [Citation.]"  (*Lantzy v. Centex Homes* (2003) 31 Cal.4th 363, 366, fns. omitted.)  "The 10–year period begins to run no later than '[t]he date of recordation of a valid notice of completion.  ([§ 337.15], subd. (g)(2).)"  (*Id*., at p. 369.)  "[T]he Legislature's clear intent, at the time it adopted section 337.15, [was] to ensure a generous but firm cutoff date for latent-defect suits."  (*Id*., at p. 367.)  But the 10-year statute of limitations "shall not apply to actions based on willful misconduct or fraudulent concealment."  (§ 337.15, subd. (f).)

Equitable estoppel " ' "comes into play only after the limitations period has run and addresses . . . the circumstances in which a party will be estopped from asserting the statute of limitations as a defense to an admittedly untimely action because his conduct has induced another into forbearing suit within the applicable limitations period.  [Equitable estoppel] is wholly independent of the limitations period itself and takes its life . . . from the equitable principle that no man [may] profit from his own wrongdoing in a court of justice." ' [Citation.]"  (*Lantzy v. Centex Homes*, *supra*, 31 Cal.4th at p. 383.)  "Accordingly, (1) if one potentially liable for a construction defect represents, while the limitations period is still running, that all actionable damage has been or will be repaired, thus making it unnecessary to sue, (2) the plaintiff reasonably relies on this representation to refrain from bringing a timely action, (3) the representation proves false after the limitations period has expired, and (4) the plaintiff proceeds diligently once the truth is

4

discovered [citation], the defendant may be equitably estopped to assert the statute of limitations as a defense to the action." (***Id***., at p. 384.)

*Trial Court's Ruling*

The trial court found that "the 10-year limitations period in . . . section 337.15 expired on April 10, 2010, over 15 months prior to the filing of [appellants'] original Complaint in this action . . . ." The court concluded that appellants' action did not fall within the exception to the 10-year statute of limitations for "actions based on willful misconduct or fraudulent concealment." (§ 337.15, subd. (f).) The court reasoned: "Any alleged willful misconduct or fraudulent concealment must go to the construction defects themselves," and appellants had failed to produce evidence sufficient to support a finding of such misconduct or fraud.

As to the equitable estoppel issue, the court concluded that appellants had "raised triable issues of fact with respect to whether the first three elements" of equitable estoppel exist. But the court decided that appellants had failed to produce evidence sufficient to support a finding as to the fourth element: that they had proceeded diligently after receiving respondent's letter stating that it would not make further repairs.

*Principles of Summary Judgment*

"The purpose of the law of summary judgment is to provide courts with a mechanism to cut through the parties' pleadings in order to determine whether, despite their allegations, trial is in fact necessary to resolve their dispute. [Citation.]" (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843.) A motion for summary judgment "shall be granted if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).)

A defendant moving for summary judgment "bears the burden of persuasion that 'one or more elements of' the 'cause of action' in question 'cannot be established,' or that 'there is a complete defense' thereto. [Citation.]" (*Aguilar v. Atlantic Richfield Co., supra,* 25 Cal.4th at p. 850; see also § 437c, subd. (p)(2).) The defendant also bears "an initial burden of production to make a prima facie showing of the nonexistence of any

5

triable issue of material fact . . . ." (***Ibid***.) " 'Once the defendant ... has met that burden, the burden shifts to the plaintiff . . . to show that a triable issue of one or more material facts exists as to that cause of action or a defense thereto. (***Ibid***.) "There is a triable issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof." (***Id***., at p. 861, fn. omitted.)

On appeal we conduct a de novo review, applying the same standard as the trial court. (*AARTS Productions, Inc. v. Crocker National Bank* (1986) 179 Cal.App.3d 1061, 1064.) "We must presume the judgment is correct . . . ." (*Jones v. Department of Corrections and Rehabilitation* (2007) 152 Cal.App.4th 1367, 1376.) Thus, "[o]n review of a summary judgment, the appellant has the burden of showing error, even if he did not bear the burden in the trial court. [Citation.]" (*Claudio v. Regents of University of California* (2005) 134 Cal.App.4th 224, 230.)

*Willful Misconduct or Fraudulent Concealment*

"A defendant moving for summary judgment based on an affirmative defense must present evidence that supports *each* element of its affirmative defense, *which would also be its burden at trial.* [Citation.] Here, [respondent's] affirmative defense was section 337.15's 10–year statute of limitations for latent construction defects, which [respondent's] separate statement of undisputed material facts sought to address by setting forth the date that the notice of completion for [appellant's] home was recorded, and the date [that appellants' filed their action against respondent.] . . . With respect to the exception [of section 337.15, subdivision (f) for "willful misconduct or fraudulent concealment"], [appellants], not [respondent], had the burden of production, specifically, the burden of producing sufficient evidence to raise a triable issue of material fact as to whether their action was based on willful misconduct [or fraudulent concealment]." (*Acosta v. Glenfed Development Corp.* (2005) 128 Cal.App.4th 1278, 1292-1293.) " ' "[W]illful misconduct implies the intentional doing of something either with knowledge, express or implied, that serious injury is a probable, as distinguished from a

6

possible, result, or the intentional doing of an act with a wanton and reckless disregard of its consequences." ' [Citation.]" (*Id*., at p. 1293.)

Appellants contend that they made a sufficient showing of willful misconduct or fraudulent concealment because they showed that respondent had intentionally "misrepresented the true condition of the Property and should be held accountable." Appellants assert: "Through the Property purchase, [they were] led to believe by [respondent's] marketing and by the purchase contract that the Property was of good, sound and stable quality, and built in accordance with all approved grading plans, zoning specifications, permits, and manufacturer requirements." Appellants also contend that they made a sufficient showing of willful misconduct or fraudulent concealment because they showed that respondent had intentionally misrepresented that it would repair defects in the property.

Appellants' showing was insufficient to raise a triable issue of fact. Appellants do not cite evidence in the record that would support a finding that respondent intentionally made the alleged misrepresentations. They cite allegations in their first amended complaint, but these allegations are not evidence. " 'The plaintiff . . . may not rely upon the mere allegations or denials' of his 'pleadings to show that a triable issue of material fact exists but, instead,' must 'set forth the specific facts showing that a triable issue of material fact exists as to that cause of action or a defense thereto.' [Citation.]" (*Aguilar v. Atlantic Richfield Co., supra,* 25 Cal.4th at p. 850; see also *Acosta v. Glenfed Development Corp.*, *supra*, 128 Cal.App.4th at p. 1286 ["In order to succeed on a motion for summary judgment based on the claimed expiration of the 10–year limitation period set out in section 337.15, a defendant is not required to produce any evidence with respect to the willful misconduct exception in subdivision (f) unless and until the plaintiff has first produced some substantial evidence of the existence of such misconduct"].)

The evidence indicates that respondent did not intentionally misrepresent that it would repair defects. It is undisputed that appellants "reported a slope failure in 2000-2002 which was repaired by [respondent]." Appellants declared: "[I]n 2001, the windows in the home began to leak. At our request, [respondent] agreed to repair the

7

windows and pay for the repairs." "During the years following [respondent's March] 19, 2002 promise to fix all problems with the Property . . . , respondent kept this promise. In 2004, at our request, [respondent] repaired cupping and unevenness in the wood floors of the upstairs landing, a bathroom, a bedroom, and the upstairs screening room. [Respondent] also paid for the replacement of the pool deck, which was completed in or around March of 2003." In 2005, "[a]s promised, [respondent] did repair our exterior walls." In November 2007 respondent "replaced all of the floors in the downstairs area of our home. Thus, from 2001 throughout 2007, [respondent] established a pattern of investigating our complaints and then repairing what was wrong, just as it promised it would do . . . ."

Even if respondent had intentionally misrepresented that it would repair defects, such a misrepresentation would not constitute "willful misconduct or fraudulent concealment" within the meaning of section 337.15, subdivision (f). We agree with the trial court that the statute applies to the fraudulent concealment of construction defects or willful misconduct in causing the defects. It is not enough that a developer has intentionally made a misrepresentation concerning the repair of construction defects. (See *Acosta v. Glenfed Development Corp.*, *supra*, 128 Cal.App.4th at p. 1286 ["we conclude that defendants may not successfully assert the 10–year limitations period set out in section 337.15 as a defense to this suit *if* the trier of fact determines that (1) there was willful misconduct involved in the construction of plaintiffs' homes, (2) such willful misconduct resulted in the alleged latent construction defects and (3) such willful misconduct was committed by the defendants or the facts and circumstances are such that the willful misconduct of others is appropriately chargeable to them"]; *Id*., at p. 1301 ["Subdivision (f) of section 337.15 is an incentive to developers and general contractors to engage in close supervision of their projects so that willful misconduct can be avoided even if simple negligent construction defects cannot"].)

*Equitable Estoppel*

As to the equitable estoppel issue, the sole question is whether appellants proceeded diligently after respondent informed them that it would not make further

repairs because the pool had been built in a no-build zone and did not comply with minimum setback requirements. If reasonable minds could differ on whether the evidence shows reasonable diligence by appellants, the trial court erred in granting the motion for summary judgment. (See *Enfield v. Hunt* (1979) 91 Cal.App.3d 417, 425 ["We conclude that reasonable minds could differ on whether the evidence shows reasonable diligence by plaintiff, and therefore the trial court erred in granting summary judgment . . . "]; *Gryczman v. 4550 Pico Partners, Ltd.* (2003) 107 Cal.App.4th 1, 7 [summary judgment was erroneously granted because "we are persuaded that at a minimum reasonable minds could differ as to the sufficiency of plaintiff's diligence in discovering Pico's breach of contract and therefore whether plaintiff exercised reasonable diligence under the circumstances is a question of fact for a jury to decide . . . "].)

We conclude that reasonable minds could differ on whether appellants proceeded diligently. We cannot fault them for investigating the matter before filing what was likely to be a long and costly lawsuit. In an email to respondent dated July 20, 2010, appellant Catherine Wandel (Catherine) requested "the paperwork" on the "slope failure" that had been repaired by respondent in 2001 or 2002. Catherine declared that, after meeting in early August 2010 "with the Building & Safety and Planning Departments of the City of Simi Valley," appellants "learned that our pool was *not* in the no-build zone." On August 3, 2010, Catherine sent the following email to respondent: "We met with Building and Safety and the Planning Department today. [¶] They said as long as the shell of the pool is 10 feet from the no-build zone we legally are fine. Our shell is 10 feet (and in some places more than 10 feet) from the no-build zone according to our measurements." Larry Lowe of Rock Designs measured the pool. In a letter to appellants, Lowe confirmed that the pool was "a minimum of 10 ft." away from the no-build zone. On August 11, 2010, Catherine sent a copy of Lowe's letter to respondent. Two days later, respondent emailed appellants that its position had not changed and that it would "not be performing additional testing or repairs in connection with this matter." Thus, although appellants knew on August 13, 2010, that respondent was not going to

9

repair the pool, they had good reason to believe that respondent's justification for refusing to make the repairs was erroneous.

The information that appellants had acquired through August 2010 was not enough to prevail in a construction defect action against respondent. Appellants needed expert testimony not only that the pool met the minimum setback requirement and was not in the no-build zone, but also that the problems with the property were due to deficiencies in respondent's preparation of the site pad and rear yard slope. On August 24, 2010, Catherine sent the following email to respondent: "We would like all the soils monitoring reports and your pool experts report. Is it possible to get copies? [¶] Would like to look at those before we start making attorneys rich." On October 6, 2010, respondent's attorney emailed appellants that his client would not disclose the reports because they "are privileged and confidential."

Appellants declared: "When [respondent] refused to provide us with their reports or findings about the soil and slope, we realized we had to hire our own geologist/soils expert. We had never had to hire anyone like this before and neither of us has a background in geology or civil engineering. After asking for referrals and talking to candidates, on December 2, 2010, we signed a contract with M3 . . . ." In view of appellants' inexperience, the two-month delay in hiring a geologist/soils expert was not unreasonable.

M3's report provided the expert evidence needed to proceed with a construction defect action against respondent. Appellants received the report in late February 2011. Appellants declared: "After we received and read the M3 report, we promptly started looking for an attorney. Other than for estate planning purposes, we had never retained an attorney before. We met with some attorney candidates and, in July 2011, retained the Law Offices of Jeffrey L. Marcus."

It took appellants more than four months to retain an attorney, but this delay was not unreasonable as a matter of law. The case was of crucial significance to appellants. In view of M3's report, the property is unsalable in its present condition. The issues are technical and complex. Appellants could expect to be engaged in a costly legal battle that

10

might continue for years. In these circumstances, appellants were not obliged to retain the first attorney who was willing to take their case. Because "reasonable minds could differ on whether the evidence shows reasonable diligence by [appellants], . . . the trial court erred in granting summary judgment." (*Enfield v. Hunt*, *supra*, 91 Cal.App.3d at p. 425, fn. omitted.) "[W]hether [appellants] exercised reasonable diligence under the circumstances is a question of fact for a jury to decide." (*Gryczman v. 4550 Pico Partners, Ltd.*, *supra*, 107 Cal.App.4th at p. 7, fn. omitted.)

In support of its argument that appellants were not reasonably diligent, respondent asserts that "California courts have held that five months is too long to wait to file a lawsuit." (Bold and italics omitted.) In support of its assertion, respondent cites *Gundogdu v. King Mai Inc.* (2009) 171 Cal.App.4th 310. There, in February 2004 the plaintiffs were aware of all construction defects and knew that the defendant home builder " 'refused to make the necessary or any repairs.' " (*Id.*, at p. 317.) "The limitations period did not expire until November 2005 and plaintiffs did not file their complaint until April 2006." (*Ibid.*) In view of the delay of two years and two months from February 2004 until the filing of the complaint, the court concluded: "The undisputed facts in this case defeat plaintiffs' claim of equitable estoppel as a matter of law. [Citation.]" (*Ibid.*) The court noted that plaintiffs did not "proceed diligently once the truth was discovered." (*Ibid.*) The court did not hold, as respondent contends, "that five months is too long to wait to file a lawsuit."

*Disposition*

The judgment is reversed. Appellants shall recover their costs on appeal.

NOT TO BE PUBLISHED.


YEGAN, J.

We concur:


GILBERT, P.J.


PERREN, J.

11

Tari L. Cody, Judge

Superior Court County of Ventura

_____

Jeffrey L. Marcus; Law Offices of Jeffrey L. Marcus, for Appellants.

Philip D. Kopp and Kevin S. McSherry; Newmeyer & Dillon, for Respondent.