Filed 10/27/16

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| KIRK ANDERSON, | B258796 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC506886) |
| v. | |
| FITNESS INTERNATIONAL, LLC, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Elia Weinbach, Judge. Affirmed.

Mancini & Associates, Marcus A. Mancini, Timothy J. Gonzales; Benedon & Serlin, Gerald M. Serlin and Kelly R. Horowitz for Plaintiff and Appellant.

Yoka & Smith, Christopher E. Faenza and Alice Chen Smith for Defendant and Respondent.

_____

# INTRODUCTION

Plaintiff Kirk Anderson appeals from a judgment entered after the trial court granted a motion for summary judgment by defendant Fitness International, LLC, doing business as L.A. Fitness. Anderson contends the trial court erred in striking the allegations in his complaint as to gross negligence, and it erred in granting summary judgment because a triable issue of fact exists as to whether L.A. Fitness was grossly negligent. We affirm.

# FACTUAL AND PROCEDURAL BACKGROUND

A.    *Anderson's Injury and Waiver*

In December 2011, Anderson, who was in his early 60's, joined the L.A. Fitness health club in Glendale. He signed a membership agreement, which included the following pertinent language enclosed within a rectangular-bordered box:

"IMPORTANT: RELEASE AND WAIVER OF LIABILITY AND INDEMNITY. You hereby acknowledge and agree that use by Member . . . of L.A. Fitness' facilities, services, equipment or premises, involves risks of injury to persons and property, including those described below, and Member assumes full responsibility for such risks. In consideration of Member . . . , being permitted to enter any facility of L.A. Fitness (a "Club") for any purpose . . . Member agrees to the following: Member hereby releases and holds L.A. Fitness . . . harmless from all liability to Member . . . for any loss or damage, and forever gives up any claim or demands therefore, on account of injury to Member's person or property, . . . whether caused by the active or passive negligence of L.A. Fitness or otherwise, to the fullest extent permitted by law, while Member . . . [is] in, upon, or about L.A. Fitness premises or using any L.A. Fitness facilities, services or equipment. . . ." (Release.)

On Sunday, September 2, 2012, Anderson finished his exercises at the health club and went to take a shower. The shower room is a single large room with approximately

2

seven shower heads on the walls. It has a tile floor which Anderson alleges has significant and sharply downward slanting slopes towards two drains located in the center of the room and is layered and covered with body oil and soapy residue. There are no handrails, shower mats, or friction strips in the room.

On September 2, Anderson wore shower sandals and was carrying his soap in one hand. As Anderson moved towards one of the shower nozzles, his left foot slipped, and he began to fall. Anderson extended his left arm to brace himself. When he hit the floor, he felt extreme pain in his arm between his elbow and shoulder; his humerus had snapped in two. One of the fitness instructors called 911, and an ambulance took Anderson to the hospital. Two days later, he underwent surgery to repair his humerus with a plate and screws.

Anderson alleges L.A. Fitness knew or should have known of what he alleges was a dangerous condition. According to Anderson, he had previously fallen twice in the men's shower room and, after each fall, had notified employees at the front desk of the dangerous condition. According to Anderson, the employees seemed only marginally interested to hear his complaints and requests to make the men's shower safer. Anderson had also notified the employees at the front desk that the shower room was dangerous after personally observing numerous other patrons fall in the men's shower.

On September 26, 2012, after sustaining his injury, Anderson wrote to L.A. Fitness notifying it that he had fallen in L.A. Fitness' shower room. He also stated: "You need to know that this is not a very safe shower room. I have fallen at least a half dozen times. I have seen quite a few others over the years, fall. There should be a sign on the wall that says something like 'CAUTION, SLIPPERY,' just to remind people to be extra careful. It would also be a good idea to put those anti slip strips on the floor, and maybe put railings on the wall so we could have something to grab on to." He further noted that "the floor is tile, and it slopes down toward the drain. It's a very slippery floor." Anderson returned to the health club in April 2013. He observed that no changes had been made to the men's shower room.

B.      *The First Amended Complaint*

Anderson filed a complaint on April 24, 2013, alleging causes of action for negligence per se and gross negligence. The gravamen of his claim for damages based on gross negligence was that L.A. Fitness reasonably could have foreseen that a member using the men's shower room would slip and fall on the floor, which was often covered with soapy or oily residue, and L.A. Fitness took no safety precautions to prevent such falls. Anderson alleged that L.A. Fitness' actions were malicious and in willful and conscious disregard of his safety, entitling him to punitive damages.

On June 3, 2013, L.A. Fitness filed a demurrer, asserting Anderson's negligence per se and gross negligence causes of action failed to state a cause of action under California law. L.A. Fitness also moved to strike Anderson's allegations in support of Anderson's claim for punitive damages.

On June 11, 2013, Anderson filed a first amended complaint alleging a single cause of action for negligence. Anderson alleges that L.A. Fitness recklessly and negligently maintained a shower room at its facility that caused Anderson injury. Anderson alleges that the tile floor has sharply downward slanting slopes towards two drains in the center of the shower room, and that the tile floor is routinely layered and covered with body oils, soap, shampoo, and conditioner residue. Anderson further alleges that L.A. Fitness knew or should have known of the dangerous conditions, in part, because Anderson had repeatedly complained to L.A. Fitness' employees. In paragraph 14, Anderson alleges that, prior to his September 2 fall, he had fallen at least twice, and on each occasion had notified unidentified L.A. Fitness employees working at the front desk of the dangerous conditions in the men's shower room. He also alleges that numerous other patrons had fallen in the shower in the preceding year. He alleges that, despite knowing of the dangerous conditions, L.A. Fitness took no action to mitigate them, such as installing shower mats, friction strips, handrails, or erecting warning signs regarding the dangerous conditions. In paragraph 16, Anderson alleges L.A. Fitness' "conduct, actions and inactions constituted [g]ross [n]egligence, in that it exhibited a want of even scant care; an extreme departure from the ordinary standard of

4

conduct . . . ." In paragraph 23, he further alleges that L.A. Fitness' acts were "willful, wanton, malicious, intentional, oppressive and despicable . . . ." As part of his prayer for relief, Anderson seeks exemplary and/or punitive damages. The first amended complaint does not mention the existence of the Release.

On June 17, 2013, L.A. Fitness took its demurrer and motion to strike off calendar. On June 25, 2013, L.A. Fitness moved to strike allegations in Anderson's first amended complaint as to gross negligence, including the allegations in paragraphs 16 and 23, as well as Anderson's prayer for exemplary and/or punitive damages.

C.      *Order Granting Motion to Strike*

On September 11, 2013, during the hearing on the motion to strike, Anderson's counsel pointed out that the complaint alleges that L.A. Fitness not only failed to install "friction or safety mats in its showers," but also that Anderson put L.A. Fitness "on notice several times that he ha[d] fallen in the showers because it's unsafe" and "that other people ha[d] also fallen." Counsel argued, "[t]he fact that [Anderson has] made so many complaints, the fact [L.A. Fitness is] on notice of prior injuries in the locker room at this facility, that is where the allegation of gross negligence comes in."

The trial court stated that Anderson has not alleged any facts to show that L.A. Fitness was put on notice of the dangerous conditions in the men's shower room. It stated, "you don't know whether those complaints came under the nose of someone with authority to give you something about them and that person tossed them in the air with reckless abandonment, or whether a secretary accidentally threw away all of the complaints so they never came to the attention of anybody who was in a position to do anything about it. Until you have those facts, you're just pleading a conclusion of gross negligence." The court further stated that if Anderson took depositions and discovered facts demonstrating someone in a position of authority disregarded notices, leave to amend would be freely granted. The court encouraged Anderson to get facts supporting a claim of gross negligence, adding, "[s]o it's not foreclosed. It's simply not in the pleading, and so it's fair for me to strike it until you actually have some facts to back it

5

up.  Leave to amend is freely granted.  It's also a means of raising a triable issue if they do move for summary judgment."

The same day the court issued a written order striking the conclusory allegations relating to "gross negligence" without leave to amend.  The trial court explained, Anderson "fail[ed] to cite any authority where courts have found similar allegations to be sufficient to state a claim for gross negligence" and had "not pled anything over and above ordinary negligence in connection with this case."  The court also found the allegations in support of Anderson's prayer for punitive damages did not "rise to the level of malice as defined by Civil Code [section] 3294."  The court thus denied leave to amend, stating, "[i]t does not appear that further leave to amend could cure the deficiencies, and therefore leave to amend is denied."  Anderson did not seek leave to amend his complaint thereafter.

L.A. Fitness answered the first amended complaint, asserting Anderson's waiver of liability pursuant to the Release as one of its affirmative defenses.


D.      *Order Granting Motion for Summary Judgment*

On December 30, 2013, L.A. Fitness moved for summary judgment, asserting "[t]he release and waiver of liability within [Anderson's] Membership Agreement bars any and all claims against [L.A. Fitness]."  In support of its motion, L.A. Fitness also filed a separate statement of undisputed facts, which set forth the language of the Release.

Anderson opposed the motion, arguing that even though the trial court struck the conclusory gross negligence allegations, the evidence was sufficient to raise a triable issue of material fact regarding whether L.A. Fitness' acts and omissions constituted gross negligence.  In support of his opposition, Anderson filed the deposition of Robert Duignan, an employee of L.A. Fitness, who stated, when a L.A. Fitness member reports a safety concern to an employee, the employee is trained to go with the member to inspect

6

the scene and then report the concern to a manager.[1]  Although Duignan stated the actions to be taken were not part of a written policy, he explained, "[i]t's what we teach. It's how we coach our employees to handle all member concerns within the club."

On June 27, 2014, during the hearing on the motion for summary judgment, Anderson's counsel acknowledged that gross negligence "is not an independent cause of action; it's a form of negligence."  Counsel also acknowledged he had not found "a case that states that if an owner of a fitness club is warned on multiple occasions about a dangerous condition on their property, and they do nothing about it and somebody gets injured that is gross negligence."  However, Anderson's counsel argued that the issue of whether L.A. Fitness' conduct rose to the level of gross negligence is an issue of fact for the jury.

The trial court noted that Anderson had conceded the waiver he signed with L.A. Fitness barred any claim against L.A. Fitness for negligence and that both parties agreed that the waiver did not bar a claim for gross negligence.  The court acknowledged, however, that the previous trial judge[2] had granted L.A. Fitness' motion to strike the allegations in the complaint concerning gross negligence, "finding that the complaint sounded in ordinary negligence, but not in gross negligence."  It also noted that, for purposes of the summary judgment motion, "the pleadings serve[d] as an outside measure of materiality in connection with summary judgment proceedings."  Thus, if Anderson was conceding that the Release barred his cause of action for negligence, he would need to seek leave to amend the complaint to defeat the summary judgment motion.

---

[1]     Although the caption page included in the record for the deposition describes Duignan as a "person most knowledgeable," the record on appeal does not contain the portions of the deposition testimony that would purportedly explain his position in the company or the basis for his knowledge of policies and procedures.

[2]     The first judge issued the September 11, 2013, order granting L.A. Fitness' motion to strike.  The case was subsequently transferred to a second judge, who heard the motion for summary judgment.

The court stated, however, that Anderson's opposition to the summary judgment motion did not seek leave to amend and that Anderson failed to show any facts had changed since the court had granted the motion to strike. Although the court overruled the majority of L.A. Fitness' evidentiary objections to certain allegations in the first amended complaint, the court stated that Anderson "has neither pled, in the complaint, nor articulated, in opposition to the motion, any facts that would support a finding that [L.A. Fitness] acted with gross negligence, as opposed to ordinary negligence." It stated that the "complaint is premised entirely on the contention that [Anderson] and others had previously slipped in the shower area and had asked [L.A. Fitness] to make the area more slip-resistant, but [L.A. Fitness] failed to do so. There is no similar authority finding such failure to act to be grossly negligent, as opposed to ordinarily negligent." The trial court thus granted the summary judgment motion and entered judgment in favor of L.A. Fitness. Anderson filed a timely notice of appeal.

## DISCUSSION

Anderson contends the trial court erred in granting the motion for summary judgment because Anderson presented evidence L.A. Fitness had notice of the shower safety hazard and failed to mitigate it and that this alone is sufficient to create a triable issue of material fact regarding whether L.A. Fitness' actions and omissions constituted gross negligence. L.A. Fitness responds that it satisfied its burden of showing the Release bars any claim against L.A. Fitness for ordinary negligence and that Anderson failed to produce evidence demonstrating a triable issue of material fact that L.A. Fitness' conduct rose to the level of gross negligence.

Viewing the evidence in the light most favorable to Anderson, liberally construing that evidence, and resolving all doubts in Anderson's favor, we conclude no triable issue of material fact exists to preclude summary judgment.

8

A.    *Standard of Review*

We review an order granting summary judgment de novo, applying the same legal standard as the trial court. (*Biancalana v. T.D. Services Co.* (2013) 56 Cal.4th 807, 813.) Thus, on a motion for summary judgment, we must determine whether "all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c); see *Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 334; *Jimenez v. 24 Hour Fitness USA, Inc.* (2015) 237 Cal.App.4th 546, 553-554.)

A defendant moving for summary judgment must show that one or more elements of the plaintiff's cause of action cannot be established or show there is a complete defense to the plaintiff's cause of action. (Code Civ. Proc., § 437c, subd. (p)(2); *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 849.) Once the defendant meets this burden, the burden of production shifts to the plaintiff to show that a triable issue of one or more material facts exists as to the defense. (Code Civ. Proc., § 437c, subd. (p)(2); see also *Aguilar*, *supra*, at p. 850 ["A burden of production entails only the presentation of 'evidence'"].) "The plaintiff . . . shall not rely upon the mere allegations . . . of its pleadings to show that a triable issue of material fact exists but, instead, shall set forth the specific facts showing that a triable issue of material fact exists as to that cause of action . . . ." (Code Civ. Proc., § 437c, subd. (p)(2).) "'[F]rom commencement to conclusion, the party moving for summary judgment bears the burden of persuasion that there is no triable issue of material fact and that he is entitled to judgment as a matter of law.' [Citation.]" (*Jimenez v. 24 Hour Fitness USA, Inc.*, *supra*, 237 Cal.App.4th at p. 553.)

In conducting our review, we must identify the issues to be considered on the motion for summary judgment, which are defined by the pleadings. (*Conroy v. Regents of University of California* (2009) 45 Cal.4th 1244, 1250.) As to each claim as framed by the complaint, "'"the motion must respond by establishing a complete defense or otherwise showing there is not factual basis for relief on any theory reasonably contemplated by the opponent's pleading."'" (*Eriksson v. Nunnink* (2011) 191

9

Cal.App.4th 826, 848 (*Eriksson*).) We conduct an independent review of the record, considering all the evidence set forth in the moving and opposition papers, except evidence to which objections were made and sustained by the trial court, and all inferences reasonably drawn from the evidence. (Code Civ. Proc., § 437c, subd. (c).) We view the evidence in the light most favorable to the party opposing summary judgment, liberally construing the opposing party's submissions and resolving all doubts concerning the evidence in favor of the opposing party. (*Jimenez v. 24 Hour Fitness USA, Inc.*, *supra*, 237 Cal.App.4th at pp. 553-554; see also *Aguilar v. Atlantic Richfield Co.*, *supra*, 25 Cal.4th at p. 856.) "We must affirm a summary judgment if it is correct on any of the grounds asserted in the trial court, regardless of the trial court's stated reasons." (*Grebing v. 24 Hour Fitness USA, Inc.* (2015) 234 Cal.App.4th 631, 637.)

B.       *The Trial Court Properly Granted Summary Judgment*

The general rule in California is that all persons are responsible "for an injury occasioned to another by his or her want of ordinary care or skill in the management of his or her property . . . ." (Civ. Code, § 1714, subd. (a); see also *Rowland v. Christian* (1968) 69 Cal.2d 108, 112 [acknowledging that some courts and commentators "have urged that the principle embodied in this code section serves as the foundation of our negligence law"].) However, parties may contract for the release of liability for future ordinary negligence so long as such contracts do not violate public policy. (*Knight v. Jewett* (1992) 3 Cal.4th 296, 309, fn. 4.; *Rosencrans v. Dover Images, Ltd.* (2011) 192 Cal.App.4th 1092, 1081.) "A valid release precludes liability for risks of injury within the scope of the release." (*Grebing v. 24 Hour Fitness USA, Inc.*, *supra*, 234 Cal.App.4th at p. 637.)

In the present case, there is no dispute that the Release is valid and is a complete defense to Anderson's negligence cause of action, insofar as the first amended complaint

10

alleges facts that constitute ordinary negligence.[3] L.A. Fitness therefore contends that, having asserted the Release as a complete defense to Anderson's negligence cause of action, the burden shifted to Anderson to produce *evidence* demonstrating L.A. Fitness' alleged conduct constituted gross negligence. It argues Anderson has failed to allege facts sufficient to show gross negligence or produce evidence satisfying his burden.[4]

Anderson contends the facts alleged in the first amended complaint are sufficient to show L.A. Fitness' gross negligence and to require L.A. Fitness, as the party moving for summary judgment, to bear the burden of producing evidence showing "how its maintenance of its shower fell within reasonable parameters." We disagree with Anderson's characterization of the burden of production in this case.

---

[3]     L.A. Fitness raised the Release as an affirmative defense in its answer and on summary judgment. (See *Baker v. Ferrel* (1947) 78 Cal.App.2d 578, 579 ["a release is an affirmative defense which must be specially pleaded"]; see also *Eriksson*, *supra*, 191 Cal.App.4th at p. 856.) Anderson has not argued that L.A. Fitness has failed to satisfy each element of the affirmative defense. Thus, there is no dispute that the Release is a complete defense and bars Anderson's cause of action, insofar as it alleges ordinary negligence.

[4]     The record does not reflect that either party produced any *evidence* in the form of expert testimony, documents, or other evidence specifically addressing the requisite standard of care applicable to maintenance of the men's shower room, and whether L.A. Fitness' alleged conduct constituted gross negligence. Instead, in opposition to the motion, Anderson primarily relied on the allegations in the first amended complaint, his own statement largely reasserting those allegations, and the deposition testimony of an L.A. Fitness employee, who stated the protocol for handling a member's complaint was to investigate the complaint and report it to management. None of these documents sets forth the requisite standard of care. L.A. Fitness pointed to the allegations in Anderson's pleadings and its separate statement of undisputed material facts and argued Anderson's allegations were insufficient to create a triable issue of material fact. Other than submitting the Release, it did not produce any evidence concerning its maintenance of the shower room or applicable safety standards for such facilities.

11

1. *Anderson bears the burden to produce evidence creating a triable issue of material fact on gross negligence.*

In *City of Santa Barbara v. Superior Court* (2007) 41 Cal.4th 747 (*Santa Barbara*), the California Supreme Court considered whether an agreement releasing the city and its employees from all claims of liability for "any negligent act or omission . . . or otherwise" while participating in the city's summer program precluded liability for gross negligence. (*Id.* at p. 751 & fn. 3.) The mother of a 14-year-old girl with developmental disabilities had signed an application form containing the release agreement before enrolling her daughter in the city's summer camp for developmentally disabled children. (*Id.* at p. 750.) After the child drowned while attending the camp, her parents filed a wrongful death action alleging that the child's death was caused by the negligence of the city and the child's counselor. Asserting the release as a defense, the defendants unsuccessfully moved for summary judgment. (*Id.* at p. 753.) The appellate court denied the defendants' petition for writ of mandate, concluding that, although the release precluded liability for ordinary negligence, it did not preclude liability for future gross negligence. (*Ibid.*)

On review, the Supreme Court acknowledged that an agreement made in the contexts of recreational programs and services, which releases liability for future negligence, is enforceable. (*Santa Barbara*, *supra*, 41 Cal.4th at pp. 750-751.) However, it affirmed the appellate court's holding that such an agreement, "to the extent it purports to release liability for future gross negligence, violates public policy and is unenforceable." (*Id.* at p. 751; see also Civ. Code, § 1668 [generally embodying the principle that such contracts are against public policy].) Explaining the difference in treatment between contracts releasing future negligence and contracts purporting to release future gross negligence, the Supreme Court stated, "the distinction between 'ordinary and gross negligence' reflects 'a rule of policy' that harsher legal consequences should flow when negligence is aggravated instead of merely ordinary." (*Santa Barbara*, *supra*, at p. 776, quoting *Donnelly v. Southern Pacific Co.* (1941) 18 Cal.2d 863, 871.)

The court emphasized that it did not view its holding as recognizing a separate cause of action for gross negligence. (*Santa Barbara*, *supra*, 41 Cal.4th at pp. 779-780.) Further, it acknowledged that since California's adoption of the comparative fault doctrine,[5] "there typically [has been] no need to distinguish gross negligence from ordinary negligence" because fact finders can compare the respective fault of the parties. (*Id*. at p. 781.) However, the court recognized that in certain limited contexts, such as in the case before it where a release of liability for negligence was signed for sports or recreational programs and services, the legal distinction between ordinary negligence and gross negligence continues to be necessary because, if supported by evidence showing the existence of a triable issue, the theory of gross negligence would be the only negligence-based theory that is potentially open to a plaintiff. (*Ibid*.) Further, it noted, that a plaintiff in pleading its cause of action "is not required to anticipate such a defense [citation]; instead, the defendant bears the burden of raising the defense and establishing the validity of a release as applied to the case at hand." (*Ibid.*)

Relying on *Santa Barbara*, our colleagues in the Fourth District held that a complaint's factual allegations of gross negligence were sufficient to require the defendant moving for summary judgment to produce evidence negating these material allegations, even though the decedent had previously signed a release of liability for the defendant's future negligence associated with the activity. (*Eriksson*, *supra*, 191 Cal.App.4th 826.) In *Eriksson*, the plaintiffs' 17-year-old daughter died while participating in an equestrian competition, which required the rider and horse to jump over hurdles. (*Id.* at pp. 830, 846.) The horse that the decedent was riding tripped over a hurdle, which caused the decedent to fall off the horse and the horse to fall on the decedent causing her death. (*Id.* at p. 830.) Her parents sued the trainer of the horse for

---

[5] See *Li v. Yellow Cab Co.* (1975) 13 Cal.3d 804, 828-829 [holding the "'all-or-nothing'" common law doctrine of contributory negligence is superseded by a comparative negligence system that assigns liability for damage in direct proportion to the fault of each party].

wrongful death and negligent infliction of emotional distress, alleging the defendant was responsible for making sure the horse was fit for competition. (*Id.* at pp. 830, 846.) The trial court granted the defendant's summary judgment motion, holding, in part, the action was barred due to the decedent's assumption of the risk inherent in engaging in the activity. (*Id.* at p. 830.)

On appeal, the court reviewed the allegations of the complaint and the defendant's separate statement of undisputed facts to determine whether the defendant had met her initial burden of production on summary judgment. (*Eriksson*, *supra*, 191 Cal.App.4th at p. 856.) It quoted the statement in *Santa Barbara* that gross negligence remained a viable theory that need not be pleaded in anticipation of a waiver of liability defense. (*Eriksson*, *supra*, at p. 856.) It also considered *Bacon v. Southern Cal. Edison Co.* (1997) 53 Cal.App.4th 854, 858 (*Bacon*), in which the *Bacon* court acknowledged that the burden of production on summary judgment shifts to the plaintiff once a defendant establishes each element of an affirmative defense, but stated that "'[i]f, in anticipation of an affirmative defense, the complaint alleges facts to refute it, the pleadings themselves create "a material issue which defendant[] would have . . . to refute in order to obtain summary [judgment]." [Citation.]'" (*Eriksson*, *supra*, at p. 856.)

As to the complaint, the *Eriksson* court noted that it set forth the material factual allegations that the defendant unreasonably increased the inherent risk of injury in horse jumping by allowing the victim to ride an unfit horse and by concealing the horse's unfitness from the victim. (*Eriksson*, *supra*, 191 Cal.App.4th at p. 856.) The court stated, "[w]hether pled in anticipation of [the defendant's] assertion of the defense of the release, as discussed in *Bacon*, or simply as facts of the case at hand, as in *Santa Barbara*, it was incumbent upon [the defendant], as part of her burden of production, to submit undisputed facts negating these material factual allegations, which could well equate to gross negligence." (*Ibid.*) Because the appellate court concluded the defendant failed to meet her initial burden of production as to these material factual allegations, it held triable issues of fact existed regarding the presence of gross negligence, precluding summary judgment. (*Id.* at pp. 856, fn. 19 & 857.)

14

We find the reasoning of *Eriksson* persuasive. Together, *Santa Barbara*, *Eriksson*, and *Bacon* stand for the principle that if a complaint alleges facts demonstrating gross negligence in anticipation of a release, the initial burden remains on the moving defendant asserting the release as a defense to produce evidence refuting the allegations constituting gross negligence. (*Eriksson*, *supra*, 191 Cal.App.4th at p. 856; *Jimenez v. 24 Hour Fitness USA, Inc.*, *supra*, 237 Cal.App.4th at p. 555; see also *Varshock v. Department of Forestry & Fire Protection* (2011) 194 Cal.App.4th 635, 651 ["Where . . . an affirmative defense contains an exception, a defendant must also negate the exception as part of its initial burden on summary judgment if, but only if, the complaint alleges facts triggering potential applicability of the exception"]; *Conn v. National Can Corp.* (1981) 124 Cal.App.3d 630, 639 ["If . . . the plaintiff pleads several theories or anticipates affirmative defenses by a show of excusing events or conditions, the challenge to the opponent is made by the complaint, requiring the moving defendant to affirmatively react to each theory *and* excusing or justifying event, or condition which supports a theory, if the motion is to be successful"]; but see *Acosta v. Glenfed Development Corp.* (2005) 128 Cal.App.4th 1278, 1293 ["That [the] plaintiffs may have anticipated [the] defendants' reliance on a limitations defense by alleging facts supporting a statutory exception to that defense is not sufficient to justify shifting the burden that otherwise would be imposed on [the] plaintiffs"].)

In the present case, viewing the allegations of the first amended complaint in the light most favorable to Anderson, we conclude Anderson has failed to allege sufficient facts to support a theory of gross negligence. We note that ordinary negligence "consists of the failure to exercise the degree of care in a given situation that a reasonable person under similar circumstances would employ to protect others from harm." (*Santa Barbara*, *supra*, 41 Cal.4th at pp. 753-754.) "'[M]ere nonfeasance, such as the failure to discover a dangerous condition or to perform a duty," amounts to ordinary negligence. (*Frittelli, Inc. v. 350 North Canon Drive, LP* (2011) 202 Cal.App.4th 35, 48.) However, to support a theory of "'[g]ross [n]egligence,'" a plaintiff must allege facts showing "either a ""'want of even scant care'"" or ""'an *extreme* departure from the ordinary

15

standard of conduct.'"'" [Citations.]" (*Santa Barbara*, *supra*, at p. 754, italics added; accord, *Eriksson*, *supra*, 191 Cal.App.4th at p. 857; *Rosencrans v. Dover Images, Ltd.*, *supra*, 192 Cal.App.4th at p. 1086.) "'"[G]ross negligence" falls short of a reckless disregard of consequences, and differs from ordinary negligence only in degree, and not in kind. . . .' [Citation.]" (*Gore v. Board of Medical Quality Assurance* (1980) 110 Cal.App.3d 184, 197.)

Thus, in cases involving a waiver of liability for future negligence, courts have held that conduct that substantially or unreasonably increased the inherent risk of an activity or actively concealed a known risk could amount to gross negligence, which would not be barred by a release agreement. (See *Eriksson*, *supra*, 191 Cal.App.4th at p. 856). Evidence of conduct that evinces an extreme departure from manufacturer's safety directions or an industry standard also could demonstrate gross negligence. (See *Jimenez v. 24 Hour Fitness USA, Inc.*, *supra*, 237 Cal.App.4th at p. 561.) Conversely, conduct demonstrating the failure to guard against, or warn of, a dangerous condition typically does not rise to the level of gross negligence. (See *DeVito v. State of California* (1988) 202 Cal.App.3d 264, 272.)

In the present case, when viewed in the light most favorable to Anderson, construed liberally, and with all inferences drawn in favor of Anderson, the allegations in the first amended complaint fail to allege sufficient facts to support a theory of gross negligence. Although Anderson alleges the tile floor in the shower room was routinely covered in oily and soapy residue, he has not alleged facts to show its condition was an extreme departure from conditions one would expect in a health club shower facility. Nor can he allege the risk in using the shower facility was unknown to him, given his prior falls and his execution of the Release. (See *Leon v. Family Fitness Center (#107), Inc.* (1998) 61 Cal.App.4th 1227, 1234 [noting slipping in the locker-room shower is among the hazards known to relate to the use of health club facilities]. Anderson also does not allege facts demonstrating that L.A. Fitness engaged in any conduct to actively increase the risk inherent its shower facility. Nor does he allege facts to show L.A. Fitness' maintenance of the shower room constituted an extreme departure from safety

16

standards or that L.A. Fitness somehow concealed a known dangerous condition. Collectively, Anderson's allegations demonstrate, at best, L.A. Fitness failed to mitigate, guard against, or warn of a dangerous condition, which is insufficient to support a theory of gross negligence, as opposed to ordinary negligence. Although the trial court struck Anderson's conclusory allegations of gross negligence, those facts would not bolster Anderson's pleading because, as the trial court found, such allegations were unsupported by any facts in the first amended complaint.

As such, L.A. Fitness' assertion of the Release as a complete defense to Anderson's negligence cause of action was sufficient to shift the burden to Anderson to produce evidence showing that a triable issue of one or more material fact exists to preclude summary judgment. (See Code Civ. Proc., § 437c, subd. (p)(2); *Bacon*, *supra*, 53 Cal.App.4th at p. 858.)

2. *No Triable Issue of Fact Exists to Preclude Summary Judgment*

From our review of the record with all facts and inferences construed in Anderson's favor, we also conclude the evidence is not sufficient to raise a triable issue of material fact that L.A. Fitness' conduct constituted gross negligence.

"'Generally it is a triable issue of fact whether there has been such a lack of care as to constitute gross negligence [citation] but not always.'" (*Chavez v. 24 Hour Fitness USA, Inc* (2015) 238 Cal.App.4th 632, 640, quoting *Decker v. City of Imperial Beach* (1989) 209 Cal.App.3d 349, 358; see also *Santa Barbara*, *supra*, 41 Cal.4th at p. 767 ["we emphasize the importance of maintaining a distinction between ordinary and gross negligence, and of granting summary judgment on the basis of that distinction in appropriate circumstances"].) Where the evidence on summary judgment fails to demonstrate a triable issue of material fact, the existence of gross negligence can be resolved as a matter of law. (See *Honeycutt v. Meridian Sports Club, LLC* (2014) 231 Cal.App.4th 251, 260 [stating a mere difference of opinion regarding how a student should be instructed does not amount to gross negligence]; *Frittelli Inc. v. 350 North*

17

*Canon Drive, LP*, *supra*, 202 Cal.App.4th at pp. 52, 53 [no triable issue of material fact precluding summary judgment, even though the evidence raised conflicting inferences regarding whether measures undertaken by the defendants were effective to mitigate effects on commercial tenant of remodeling project]; *Grebing v. 24 Hour Fitness USA, Inc.*, *supra*, 234 Cal.App.4th at p. 639 [no triable issue of material fact where defendant took several measures to ensure that its exercise equipment, on which plaintiff was injured, was well maintained].)

Relying on *Grebing v. 24 Hour Fitness USA, Inc.*, *supra*, 234 Cal.App.4th 631, Anderson argues that L.A. Fitness' notice of an existing risk and lack of effort to mitigate the risk are "factors" that demonstrate L.A. Fitness' gross negligence and preclude summary judgment. In *Grebing*, the plaintiff, who had twice signed a waiver of liability agreement with 24 Hour Fitness, was injured when a clip, which was incorrectly placed on a low row machine, failed, causing the handlebar to break free from the cable and strike the plaintiff in the forehead. (*Id.* at p. 635.) During the hearing on the motion for summary judgment, the trial court heard evidence that 15 minutes before the plaintiff's injury, another member reported that a different machine had a crooked clip. (*Id.* at p. 636.) The appellate court held that, to the extent the plaintiff was claiming 24 Hour Fitness should have inspected and replaced broken or improper clips on all machines within the 15 minutes after the other member complained, plaintiff's claim was insufficient to raise a triable issue of gross negligence, especially in light of the evidence of the safety measures undertaken by 24 Hour Fitness to ensure that its exercise equipment and facility were well maintained. (*Id.* at pp. 636, 639.)

Here, even if a defendant's notice of a dangerous condition and failure to mitigate it are factors that could demonstrate gross negligence, as the trial court found, Anderson failed to produce sufficient facts demonstrating that L.A. Fitness received notice of his complaints. Anderson did not produce evidence demonstrating to whom he purportedly gave notice or when it was provided. Nor did he produce evidence to support his conclusion that L.A. Fitness took *no* measures or failed to use even scant care to mitigate the inherent risk associated with its shower facility. Anderson also has not raised a

18

triable issue of fact regarding the applicable duty of care for the men's shower or that L.A. Fitness' conduct amounted to an extreme deviation from that duty.

In *Jimenez v. 24 Hour Fitness USA, Inc.*, *supra*, 237 Cal.App.4th 546, one of the plaintiffs was injured when she fell backwards off of a moving treadmill and hit her head on an exercise machine that was approximately three feet behind the treadmill. (*Id*. at p. 549.) The plaintiffs presented evidence "indicating a possible industry standard on treadmill safety zones," including the manufacturer's statement in its manual that a six-foot space behind the treadmill was necessary for user safety and an expert's statement that placing other equipment so close to the back of the treadmill greatly increased the risk of injury. (*Id*. at p. 556.) The court concluded, based on this evidence, a jury could reasonably find the failure to provide the *minimum* safety zone was an extreme departure from the ordinary standard of care, and thus a triable issue of fact existed to preclude summary judgment. (*Id*. at p. 557.)

Here, unlike *Jimenez*, Anderson presented no expert evidence regarding the safety standards applicable to the men's shower room. (See *Rosencrans v. Dover Images, Ltd.*, *supra*, 192 Cal.App.4th at pp. 1086-1087 [triable issue of fact as to gross negligence where a safety expert's declaration described common safety precautions for motocross and stated that the defendant's failure to take those safety precautions constituted an extreme departure from the ordinary standard of conduct and showed a blatant disregard for the safety of the participants].) Nor did he produce evidence showing that L.A. Fitness failed to take any safety precautions in maintaining the shower room. (See *Chavez v. 24 Hour Fitness USA, Inc.*, *supra*, 238 Cal.App.4th at pp. 640-642 [triable issue of fact as to gross negligence where the plaintiffs presented evidence that preventative maintenance on machine which caused injury was not performed when scheduled].) Although Anderson presented evidence that he notified employees at the front desk that the men's shower room was dangerous and that employees were supposed to investigate member complaints of safety concerns, he did not present any evidence that these protocols were not followed. Instead, he merely relied on his own statement that he did not observe any changes to the men's shower room after his accident. This statement

19

alone is insufficient to defeat summary judgment.  (See Code Civ. Proc., § 437c, subd. (p)(2).)

Moreover, Anderson did not argue before the trial court, or even on appeal, that he *could* have alleged sufficient facts or produced evidence to raise a triable issue of material fact that L.A. Fitness' conduct rose to the level of gross negligence.  Instead, he asserts, if summary judgment is affirmed on appeal, leave to amend should be granted to "reassert the legal conclusions that the trial court erroneously struck."[6]  If facts supporting a theory of gross negligence exist, Anderson had ample opportunity to present such facts; his failure to do so before the trial court does not warrant granting leave to amend on appeal.  (See *Eastburn v. Regional Fire Protection Authority* (2003) 31 Cal.4th 1175, 1185-1186 [trial court properly denied amendment of complaint where nothing in the plaintiffs' pleadings or appellate briefs pointed to such extreme conduct as to support a finding of gross negligence]; *Lodi v. Lodi* (1985) 173 Cal.App.3d 628, 631 [leave to amend need not be granted where no prospect of saving the pleading by amendment is apparent].)

Accordingly, in the absence of evidence that the condition of the floor in the men's shower room evidenced an extreme departure from the standard of care, there is no basis for a trier of fact to conclude that L.A. Fitness was grossly negligent, as opposed to

---

[6]     The first amended complaint originally included the allegations in paragraph 16 that L.A. Fitness' "conduct, actions and inactions similarly constituted [g]ross [n]egligence, in that it exhibited a want of even scant care; an extreme departure from the ordinary standard of conduct," and in paragraph 23 that L.A. Fitness' acts were "willful, wanton, malicious, intentional, oppressive and despicable."  The trial court struck what Anderson describes as the "conclusory allegations" regarding gross negligence, leaving intact facts Anderson argues are still sufficient to demonstrate gross negligence.  Anderson did not seek leave before the trial court to amend the first amended complaint or request in its opposition to the motion for summary judgment leave to amend the complaint.  In light of our conclusion that the evidence was not sufficient to raise a triable issue of material fact that L.A. Fitness' conduct could be found to constitute gross negligence, any error in the trial court striking the conclusory allegations without leave to amend was harmless.

20

ordinarily negligent.  Thus, we conclude L.A. Fitness has satisfied its burden of persuasion on summary judgment of demonstrating "'that under no hypothesis is there a material factual issue requiring trial.'"  (*Melendrez v. Ameron Internat. Corp.* (2015) 240 Cal.App.4th 632, 638.)

## DISPOSITION

The judgment is affirmed.  L.A. Fitness is awarded its costs on appeal.

GARNETT, J.[*]

We concur:

PERLUSS, P. J.

SEGAL, J.

---

[*]	Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.