Filed 10/8/24  Portillo v. Madera County CA5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

|  |  |
|---|---|
| MICHELLE PORTILLO et al., | F086063 |
| Plaintiffs and Appellants, | (Super. Ct. No. MCV085407) |
| v. | |
| MADERA COUNTY, | **OPINION** |
| Defendant and Respondent. | |

-ooOoo-

APPEAL from a judgment of the Superior Court of Madera County.  Katherine Rigby, Judge.

Law Office of Barry S. Zelner and Barry S. Zelner for Plaintiffs and Appellants.

Lozano Smith, Mark K. Kitabayashi, and Fabiola M. Rivera for Defendant and Respondent.

-ooOoo-

Appellants[1] are a number of campers that were caught in the 2020 Creek Fire. They sued Madera County (County) after they were injured, claiming a County employee negligently advised them about the fire danger and broke a promise to inform them if the danger increased. The trial court dismissed their third amended complaint on demurrer. Appellants challenge this ruling. For the reasons set forth below, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

The allegations made in this case have developed over time. In the original and first amended complaints, the parties focused heavily on defining the duty allegedly owed to appellants. Appellants' pleadings evolved to allege a special relationship between appellants and a County employee that had provided evacuation and fire danger advice. By the time the second amended complaint was filed, the allegations underlying the alleged duty had been thoroughly considered, and the parties began to focus on issues surrounding immunity.

County's demurrer to the second amended complaint highlighted this narrowing. During those proceedings, the trial court orally sustained the demurrer based upon an argument that County was immune from suit. In doing so, the trial court stated that for most "of the previous demurrers, the argument has focused around duty, and in the Court's mind, you have met that burden, and you've established a duty. I understand it's not a duty that is normally recognized, but I think you pled enough facts to establish that duty." Appellants were yet again granted leave to amend on statements they could plead gross negligence to overcome the immunity issues.

*Third Amended Complaint*

Appellants then filed their third amended complaint. Continuing the factual narrative developed in the prior complaints, the third amended complaint alleged that

---

[1] The appellants in this case are Michelle Portillo, Antonio Montegano, Natalie Gonzalez, Priscilla Hernandez, Priscilla Aviles Rivas, Allan Cruz, Diana Fuentes, Kevin Portillo, Christian Aviles, Victor Velasquez, Earvin Farfan, and Brandon Delgado.

appellants were "camping with friends and relatives at the Mammoth Pool Reservoir" when they "observed a fire in the distance and immediately called 911 to determine the location of the fire." This first call occurred at 12:50 a.m. on September 5, 2020. The call was "immediately transferred to a Madera County employee who identified himself as a County employee." After being advised of the sighted fire, the County employee stated they were "attempting to determine where the fire was located" and advised appellants "the forest service would be contacted."

Sometime before 3:00 a.m., appellants called the employee a second time. The third amended complaint alleged "[t]he following conversations occurred: (1) [appellants were] advised by the County employee that the fire was not a danger to [appellants] for a minimum of 3-4 days and they would not have to evacuate; (2) in the event there was any change in that opinion of the fire danger in less than 3-4 days, the County official who had been provided [appellants'] phone number would immediately contact them and warn them of any potential danger so [appellants] could immediately evacuate; (3) the County employee indicated that the forest service had been contacted and would inspect the area and, once again, if they were alerted to any particular potential danger, they would immediately advise [appellants] of any danger; [and] (4) [appellants] emphasized that during these phone calls there were over 150 people in the area and if the fire spread to the area there would be a potential danger." According to the third amended complaint, the "County employee acknowledged" the risk of danger and indicated "that he would immediately notify [appellants] if there was any danger of the fire spreading" but that "at that time there was absolutely no peril or emergency."

The third amended complaint next alleged that "the Madera County employee was aware that any fire could spread and voluntarily accepted the duty to advise [appellants] of the status of the fire if it would become a peril and advise [appellants] to leave the area," and that this was "an express agreement with all [appellants]." Appellants alleged they would have left if they received this notice but instead "stayed under a false sense of

3.

security." They asserted that the employee's actions "increased the risk of harm to them," the employee "specifically indicated that there was no specific emergency or peril occurring at all," and "if it did that [appellants] would be immediately advised."

The third amended complaint then asserted "it was grossly negligent for the employee not to notify [appellants] who were there over 12 hours before the fire spread." It further noted there were never any emergency services sent to appellants and none were allegedly necessary at the point in time appellants spoke with the employee. However, appellants alleged County was "aware in approximately 2018 a similar fire occurred and spread to the area where [appellants] were camping."

Appellants further alleged they were "advised there was no need to conduct any investigation on their own to determine the nature of the fire spreading" and that the conduct of County "induced a false sense of security that [appellants] were safe and did not need to evacuate the area." However, "at approximately 12:00 p.m." and "without any notice from the County of Madera the fire was raging in the immediate area[, appellants] tried to escape but were unable to do so," resulting in serious injuries.

As further support for the claim of gross negligence, the third amended complaint alleged "the failure to doing [sic] the following was clearly gross negligence …:

"(a) The County official indicated that at the time of the phone call, the fire was not a fire of imminent peril and that [appellants] could remain in the area as the fire was at least three to four days away.

"(b) In the event the fire progressed in any manner whatsoever, [the employee] was provided [appellants'] phone number and indicated that he would immediately contact them forthwith so they could evacuate. [Appellants] would have been able to evacuate within 30 minutes or less from the area if they had received said phone call.

"(c) The County official indicated upon receiving the phone call he would check with the Forest Service to either inspect the area or make a determination of whether the fire was an imminent peril and if so would immediately advise the plaintiffs.

"(d) The [C]ounty official was put on notice that there were at least 150 people in the area and that if the fire spread and they would be unable to evacuate there would be very serious injuries. The County official acknowledged that fact, and reiterated he would be in contact with [appellants] if this fire spread knowing the risk to [appellants] so they could timely evacuate.[]

"(e) The County employee acknowledged that fires could spread but that in any event there would be a period of time where he would be able to notify [appellants] so they could evacuate and he would notify them of the danger.

"(f) The employee emphasized at the time there was absolutely no peril or emergency condition and if so he would absolutely provide them enough notice to evacuate the area.

"(g) The County became aware that the fire was spreading and could impact the area where plaintiffs were residing. Despite this danger, and acknowledge [*sic*] by the County employee failed to take any effort to determine whether or not the fire was spreading to where [appellants] were located from the initial time the call was made from [appellants], thus acting in complete and utter disregard for the safety of the [appellants].

"(h) The County was aware of a similar fire spreading several years ago in the same area causing damages."

*Third Demurrer, Hearing, and Ruling*

After appellants filed their third amended complaint, County again demurred. Unlike the prior two demurrers, County did not raise a duty argument, but rather continued to argue immunity "based on the emergency services immunity provided for in Health and Safety Code section 1799.107." Appellants opposed the motion, arguing there was no imminent peril or emergency services ongoing and the County employee's conduct constituted gross negligence as described in the third amended complaint.

The trial court provided a tentative ruling sustaining the demurrer without leave to amend, discussing two points. First, the court stated, "It is unclear to this judicial

5.

officer—though this is not raised in the moving papers, I will note that it is unclear to this judicial officer which [appellant] is specifically the one who made the phone call in which the alleged promise was made by the County employee and how that promise somehow would extend to all the other named [appellants]. It is further unclear how there is an expressed agreement between the County employee who allegedly failed to act and those other named [appellants] who may or may not have made their own phone call."

Reaching the disputed issue, the trial court then stated it "tentatively would find that the emergency immunity of Health and Safety Code Section 1799.107 … would, in fact, apply" based on the court's conclusion that "immunity attaches to 911 operators as well as firefighters, et cetera," and that "at the time of the alleged failure to act by the County employee, based on the four corners of the [third amended] complaint, it was an emergency situation of … imminent peril." The court further found the factual allegations did not rise to the level of gross negligence.

At a following hearing, the trial court sustained the demurrer to the third amended complaint without leave to amend. This appeal followed.[2]

## DISCUSSION

The principal basis identified by the trial court for granting the demurrer to the third amended complaint was its conclusion that County was immune to liability under Health and Safety Code section 1799.107.[3] Appellants argue that the facts alleged in its third amended complaint do not support this finding and, even if they do, the immunity is

---

[2] Appellants filed their notice of appeal one day before judgment was formally entered. We treat the prematurely filed notice as being from the judgment. (See *Brooks v. Mercy Hospital* (2016) 1 Cal.App.5th 1, 4, fn. 2 [premature notice treated as timely].) We further note the notice of appeal properly included all appellants currently before the court.

[3] Undesignated statutory references are to the Health and Safety Code.

inapplicable because appellants have adequately alleged gross negligence.[4]  We do not agree.  Appellants' allegations fall short of demonstrating immunity is inapplicable in this case.[5]

### ***Standard of Review and Applicable Law***

"The California Tort Claims Act provides that '[a] public entity is not liable for an injury,' '[e]xcept as otherwise provided by statute.' (Gov. Code, § 815, subd. (a).)  As that language indicates, the intent of the Tort Claims Act is to confine potential governmental liability, not expand it." (*Eastburn v. Regional Fire Protection Authority* (2003) 31 Cal.4th 1175, 1179 (*Eastburn*).)  "Government Code section 815.2, subdivision (a), makes a public entity *vicariously* liable for its employee's negligent acts or omissions within the scope of employment (see Gov. Code, § 820), but section 815.2, subdivision (b), adds the important qualification that a public entity is not liable for injuries committed by an employee who is immune from liability for such injuries." (*Id.* at p. 1180.)

The principal basis for immunity claimed in this case is section 1799.107.  Section 1799.107, subdivision (a) explains that immunity is provided "for public entities and emergency rescue personnel providing emergency services."  Section 1799.107, subdivision (b) states that public entities and emergency rescue personnel are immune from actions "taken by the emergency rescue personnel acting within the scope of their

---

[4]  Appellants make no claim that they could further amend their complaint to overcome these pleading issues.  Arguments not raised or supported are deemed forfeited.  (*Cahill v. San Diego Gas & Electric Co.* (2011) 194 Cal.App.4th 939, 956; see *Brown v. Deutsche Bank National Trust Co.* (2016) 247 Cal.App.4th 275, 282 [applying forfeiture rule to argument that trial court abused its discretion in sustaining demurrer without leave to amend].)

[5]  Generally, a court first determines whether the defendant owes a duty to the plaintiff before it determines whether the defendant is immune.  (See *Caldwell v. Montoya* (1995) 10 Cal.4th 972, 978, fn. 3 [noting exception to general " 'duty before immunity' " doctrine].)  However, it may elect to proceed directly to the immunity issue on the grounds of expediency and judicial economy.  (*Ibid.*; *Cruz v. Briseno* (2000) 22 Cal.4th 568, 572.)  We find such a procession appropriate here.

employment …, unless the action taken was performed in bad faith or in a grossly negligent manner."

" '[E]mergency rescue personnel' means any person who is an officer, employee, or member of a fire department or fire protection or firefighting agency of the federal government, the State of California, a city, county, city and county, district, or other public or municipal corporation or political subdivision of this state, or of a private fire department" "while he or she is actually engaged in providing emergency services as defined by [section 1799.107, ]subdivision (e)." (§ 1799.107, subd. (d).) " '[E]mergency services' includes, but is not limited to, first aid and medical services, rescue procedures and transportation, or other related activities necessary to insure the health or safety of a person in imminent peril." (§ 1799.107, subd. (e).)

Our Supreme Court considered the scope of this immunity in the context of 911 operators employed by a city in *Eastburn*. Considering the scope of immunity provided by the statute, the court found that "section 1799.107 is clearly broad enough to include [911 emergency dispatching] within its scope. The city's 911 dispatcher certainly was an employee working for the city's 'fire protection' agency within the scope of subdivision (d), and this dispatcher was employed by the city to provide, and was 'actually engaged in providing emergency services as defined in [section 1799.107,] subdivision (e).' " (*Eastburn, supra*, 31 Cal.4th at p. 1184.) "The 911 dispatching service, at the least, is an activity closely 'related' to emergency rescue operations" and, thus, "section 1799.107 unambiguously applies to 911 emergency dispatching." (*Ibid.*)

"A demurrer tests the legal sufficiency of the factual allegations in a complaint." (*Regents of University of California v. Superior Court* (2013) 220 Cal.App.4th 549, 558.) "When a demurrer is sustained, appellate courts conduct a de novo review to determine whether the pleading alleges facts sufficient to state a cause of action under any possible legal theory." (*Gutierrez v. Carmax Auto Superstores California* (2018) 19 Cal.App.5th 1234, 1242.) "When conducting this independent review, appellate courts 'treat the

8.

demurrer as admitting all material facts properly pleaded, but do not assume the truth of contentions, deductions or conclusions of law.' " (*Esparza v. Kaweah Delta Dist. Hospital* (2016) 3 Cal.App.5th 547, 552.) We may also consider matters subject to judicial notice and will affirm the judgment if any ground for the demurrer is well taken. (*Ramirez v. Tulare County Dist. Attorney's Office* (2017) 9 Cal.App.5th 911, 924.)

"Since all California governmental tort liability flows from the California Tort Claims Act [citations], the plaintiff must plead facts sufficient to show his cause of action lies outside the breadth of any applicable statutory immunity." (*Keyes v. Santa Clara Valley Water Dist.* (1982) 128 Cal.App.3d 882, 885–886.) In this case, that would mean appellants demonstrating that County either falls outside of the definition of the statutory immunity noted above or acted with gross negligence.

"Generally, '[g]ross negligence is pleaded by alleging the traditional elements of negligence: duty, breach, causation, and damages. [Citation.] However, to set forth a claim for "gross negligence" the plaintiff must allege extreme conduct on the part of the defendant.' [Citation.] To constitute gross negligence, misconduct must demonstrate 'either a " ' "want of even scant care" ' " or " ' " an extreme departure from the ordinary standard of conduct." ' " [Citations.]' [Citation.] Although gross negligence usually presents a question of fact [citation], in some circumstances its existence can be resolved as a question of law [citation]." (*Frittelli, Inc. v. 350 North Canon Drive, LP* (2011) 202 Cal.App.4th 35, 52, first, second, & fourth bracketed insertions in original.) Mere nonfeasance, such as failing to discover a dangerous condition or perform a duty is ordinary negligence. (*Id.* at p. 48.)

### *The Pleadings Did Not Disprove Emergency Rescue Personnel Involvement*

Appellants contend the County employee to whom their call was transferred does not qualify as emergency rescue personnel under *Eastburn* because "he was an employee separate from the 911 dispatcher with whom they initially spoke because, as they allege,

9.

the call was transferred." According to appellants, *Eastburn* "did not extend the statute to cover every municipal employee that any person speaks to when making a call to 911."

Appellants' argument fails to account for the pleading burden placed on appellants in this instance. It is not enough to merely allege that their call was transferred to someone other than a 911 operator. Rather, appellants must allege facts demonstrating that the individual to whom liability may attach is not covered by the immunity statute. Even when viewed in the light most favorable to appellants, the allegations here fail to meet that standard.

Appellants' allegations affirm that they initially called 911 and spoke to a 911 operator about a visible fire. Such an individual is, under *Eastburn*, emergency rescue personnel. While this court recognizes that the 911 operator's actions are not the basis for the allegations of liability, such a base fact does not end the analysis. Rather, the pleadings specifically state that the 911 call was transferred to someone who identified themselves as a County employee and that this person spoke to appellants knowledgeably about the fire, its movements, and the County's ability to find out where the fire was spreading. No allegations were made that this County employee did not work for any fire protection agency or in any fire protection capacity, nor would the pleadings support such an inference given the express concession the employee was knowledgeable about fire-related issues. Further, no allegation was made that the transfer was inappropriate or was made to an agency not otherwise responsible for fire protection services. Rather, the most reasonable inference is that one emergency rescue personnel transferred a call for services to another emergency rescue personnel in the course of their duties. Such pleadings fall short of demonstrating the accused employee falls outside of the definition of emergency rescue personnel.

### *The Pleadings Did Not Disprove Emergency Services Were Provided*

Appellants also challenge the applicability of section 1799.107 on the ground there was no emergency and, therefore, nobody was providing emergency services. Appellants

10.

argue that despite calling 911, "there was no discussion of any need for an emergency rescue—[appellants] called simply to inquire about the status and location of the fire, and they called 911 because it was the middle of the night and that is the only place where someone might be able to answer."[6] They contend "they did not need emergency rescue services when they called 911 because they could have evacuated themselves if they had only known the fire would reach them quickly."

We find appellants' focus on the need for an emergency rescue to be misplaced. As noted above, "emergency services" is fairly broadly defined, including but not being limited to "first aid and medical services, rescue procedures and transportation, or other related activities necessary to insure the health or safety of a person in imminent peril." (§ 1799.107, subd. (e).) The third amended complaint alleged appellants sought information on the location of the fire, first calling emergency services and then calling the County employee directly. The allegations stated that there were more than 150 people at the campsite and thus, if the fire spread, there could be serious consequences. In response, the allegations contended the County employee provided an assessment of the fire danger, gave information about when evacuations were likely to be needed, and asserted they would continue to obtain information about the fire. All of these activities fall well within the concept of "rescue procedures and transportation" and are at a minimum related to such services.

Further, the allegations themselves showed that to the extent merely related to rescue procedures and transportation, the County employee's activities were "necessary

---

[6]     The third amended complaint does not specifically disclose that appellants called 911 because that might be the only place someone would answer in the middle of the night. However, even if such an assertion were true, it would not help appellants' position. Rather, it further indicates that upon seeing a potential threat, appellants felt they needed an immediate enough answer that they sought to call emergency services knowing that was the only place that could help them at the time.

11.

to insure the health or safety of a person in imminent peril."[7] Despite their assertion that no emergency rescue was needed, appellants were sufficiently concerned about the danger of a fire to call emergency services. And the County employee provided information related to fire movement and evacuation timing which, if accurate, could reduce the danger of the existing fire to those camping in the area. Finally, it is beyond argument that a visible wildfire constitutes an imminent peril to nearby campers in most instances, and nothing in the pleadings, other than the assertion that no emergency rescue was needed, shows this fire should be considered anything other than an imminent threat. A promised response regarding evacuation needs and fire movement given in the face of such a threat is readily within those acts necessary to ensure the health or safety of a person in imminent peril.

### *The Pleadings Did Not Allege Facts Showing Gross Negligence*

Relying on the allegations added to the third amended complaint, appellants argue that even if a statutory immunity covers this situation, appellants have pleaded facts sufficient to show gross negligence and thus have stated a valid claim. Appellants argue the County employee's conduct, as alleged, shows " 'such a lack of care' that it indicates the employee's 'passive indifferent attitude toward the results' of voluntarily making an explicit promise to" appellants. Appellants argue this is not a situation where they must plead what the employee should have done, but rather that the actions taken by the employee show gross negligence because he "should have either (i) *not* told them they were safe to stay in the area for three to four days with a promise to tell them otherwise or (ii) found out from the forest service about the progress of the fire and called

---

[7]     For the purposes of this analysis, we consider this phrase in the context of an immediate and preset emergency. However, we take no position on whether it is so limited. Given the reference to rescue procedures, the phrase could also be read to protect activities that are taken to insure the health and safety of one in imminent peril at some point in the future.

[appellants] back—as promised—to warn them of the approaching fire at any point during the twelve hours it was spreading toward them." We do not agree.

Gross negligence requires pleading more than " 'a failure to exercise the degree of care in a given situation that a reasonable person under similar circumstances would employ to protect others from harm.' " (*Anderson v. Fitness Internat., LLC* (2016) 4 Cal.App.5th 867, 881 (*Anderson*).) It requires alleging "facts showing 'either a " ' "want of even scant care" ' " or " ' "an *extreme* departure from the ordinary standard of conduct." ' " ' " (*Ibid.*) This can be done, for example, by alleging conduct that "substantially or unreasonably increased the inherent risk of an activity," "actively concealed a known risk," or "evinces an extreme departure from manufacturer's safety directions or an industry standard." (*Ibid.*) But "conduct demonstrating the failure to guard against, or warn of, a dangerous condition typically does not rise to the level of gross negligence." (*Ibid.*)

Thus, in *Anderson*, allegations that a tile floor was regularly soapy was insufficient to show gross negligence. There was no evidence such conditions were an extreme departure from what one would expect in a shower facility, no indication the plaintiff was unaware of the risks, no evidence the defendant engaged in any "conduct to actively increase the risk inherent its shower facility," nor facts showing the defendant's "maintenance of the shower room constituted an extreme departure from safety standards" or otherwise "concealed a known dangerous condition." (*Anderson, supra*, 4 Cal.App.5th at p. 882; see also *Carr v. City of Newport Beach* (2023) 94 Cal.App.5th 1199, 1207 [failure to warn of dangers inherent in diving headfirst into water from nearby groin does not rise to level of gross negligence].)

As a contrary example, the facts pleaded in *Arista v. County of Riverside* (2018) 29 Cal.App.5th 1051, 1063–1064 were sufficient to demonstrate gross negligence. In *Arista*, a wife reported her husband missing. The pleadings alleged that the responding agency had cell phone location evidence showing the husband was near a mountain peak.

Despite this, and in the face of the report the husband was missing and injured, the responding agency stated without support they believed the husband was likely covering his tracks because he was being unfaithful. The agency further admitted it would have sent a helicopter out had it been a child missing, demonstrating additional resources were available. These facts, showing an unfounded refusal to act despite reasonable evidence of need and available resources, met the applicable pleading standards. (*Ibid.*)

In this case, the allegations are that a County employee learned appellants were camping and could see a fire. That employee told appellants they would be safe for multiple days in their location and made a promise to contact them if the situation changed. This promise was the predicate for the alleged duty and, thus, the breach allegedly occurred when no call came in the next twelve hours. Aside from this general nonfeasance allegation, the only additional fact pleaded is that County knew a prior fire had spread to the same area in the past and that there were multiple people camping in the area.

In line with the insufficient pleadings in *Anderson*, there are no facts suggesting the employee learned of an increased danger to appellants and ignored those dangers. There are no facts suggesting the employee breached any relevant procedures or internal policies in failing to call appellants. There are no facts suggesting that the actual danger presented by the fire increased because of the employee's conduct or that appellants were incapable of continuing to monitor their own safety because of the employee's negligence. Rather, the only facts alleged are that the employee made a promise to call if the danger increased and failed to do so. Such allegations suggest ordinary negligence. While it does not take much in the way of factual allegations to sufficiently plead gross negligence, it requires something more than a bare assertion of ordinary negligence. (See *Jimenez v. 24 Hour Fitness USA, Inc.* (2015) 237 Cal.App.4th 546, 557–561 [discussing, in summary judgment context, multiple cases demonstrating that facts showing mere

negligence are insufficient to demonstrate gross negligence].)  Accordingly, we find no error in the trial court's ruling.

## DISPOSITION

The judgment is affirmed.  Costs are awarded to County.


HILL, P. J.

WE CONCUR:


MEEHAN, J.


SNAUFFER, J.